**Kaseem COLEMAN, et al.**

v.

**Joseph STANZIANI, et al.**

**Civ. A. No. 81–2215.**

United States District Court,
E.D. Pennsylvania.

Sept. 14, 1983.

Lawrence M. Schall, Juvenile Law Center of Philadelphia, Philadelphia, Pa., for plaintiffs.

Kathleen F. McGrath, Deputy Atty. Gen., Harrisburg, Pa., Howland Abramson, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiffs have brought suit under 42 U.S.C. § 1983 challenging the constitutionality of the Pennsylvania Juvenile Pretrial Detention statutes. The pertinent portions are attached hereto as an appendix. Plaintiffs seek damages, declaratory and injunctive relief. I have certified a plaintiffs' and a defendants' class. Plaintiffs' class consists of all allegedly delinquent juveniles in Pennsylvania who are or will in the future be detained before adjudication pursuant to 42 Pa.Cons.Stat.Ann. §§ 6325 and 6335, and all adjudicated delinquent juveniles who are now or in the future will be detained before their disposition hearing pursuant to § 6341.

The defendant class is composed of all juvenile court judges and masters and all juvenile probation officers in Pennsylvania who are now or who will be responsible for hearing delinquency matters and conducting detention procedures.

Defendants have moved for judgment on the pleadings and/or for partial decertification of plaintiffs' class. Defendants argue that named plaintiffs do not have standing to represent the interest of future pretrial detainees; that those named plaintiffs who were in detention at the time of filing the

complaint must bring a habeas corpus action, exhausting their remedies in state court, rather than a suit under § 1983; and that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) or *Railroad Commissioner v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) requires that I abstain from deciding the merits of the case. I shall deny defendants' motion.

## I. Standing

There are four named plaintiffs. At the time of the filing of the complaint, plaintiffs Coleman and Mattox had already been released from detention; plaintiffs Lawrence and Freddie Wiggins were in detention pursuant to the provisions of the challenged statute.

Defendants argue that named plaintiffs Coleman and Mattox lack standing. Article III of the United States Constitution requires that those who seek to invoke the jurisdiction of the federal courts must allege an actual case or controversy. *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947 (1968). A plaintiff must show that he has a "personal stake in the outcome," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) and that he "has sustained or is immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons,* —— U.S. ——, ——, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).

Defendants agree that named plaintiffs Mattox and Coleman would have standing to assert a valid damages claim. Defendants argue, however, that the claim of Coleman and Mattox for damages is faulty because defendants are judges and probation officers who would enjoy at least a good faith immunity. Because it is clear from the pleadings that plaintiffs were detained pursuant to a state statute which has not previously been found unconstitutional, defendants claim that their good faith immunity is established by the pleadings. Defendants fail to consider, however, that Montgomery County is also a named defendant in this action. Even if I were to find that individual judges and probation officers were immune[1] because of absolute or good faith immunity, the county would not acquire immunity and would still be subject to a suit for damages. *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Therefore, plaintiffs Mattox and Coleman have standing to bring their damages action in federal court.

The question then arises whether any of the named plaintiffs have standing to seek injunctive and declaratory relief. In *City of Los Angeles v. Lyons, supra,* the plaintiff had suffered injury as a result of a chokehold applied to him pursuant to Los Angeles police regulations. The Court held that Lyons clearly presented a case or controversy as to the damages claim, but that he did not have standing to seek injunctive relief because his standing to claim damages did not establish "a real and immediate threat" that he would again be stopped and choked into unconsciousness. Clearly, therefore, under *Lyons,* if this case were brought solely by Coleman and Mattox in their individual capacity, they would not have standing to seek an injunction of the pretrial detention statute.

Because I find that plaintiffs Freddie and Lawrence Wiggins have standing to seek injunctive and declaratory relief, I need not reach the question of whether the claims of Coleman and Mattox for damages would be sufficient to grant them standing to seek injunctive and declaratory relief in a class action suit. Like defendants here, however, courts have tended to confuse the requirements for standing and class representation under Federal Rule of Civil Procedure 23. "Class Standing and the Class Representative," 95 Harv.L.Rev. 1637 (1981).

I have already certified the class to include all juveniles who will be detained in the future pursuant to the provisions in

---

1. Because it is not necessary for my determination of the validity of the damages claim, I

decline to reach the question of whether individual defendants are immune.

question. There is a point where the class becomes the plaintiff in a lawsuit. In mootness cases, it appears that that point occurs at certification of the class. *Id.* at 1643 n. 39. *See Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (holding that even though the class was moot as to the named plaintiff, the case was live for the class which plaintiff had been certified to represent). Because the class in this case is defined to include all who will be detained in the future, there is no question that there is a "real and immediate threat" that class members will be subject to the application of the allegedly unconstitutional provisions of the statute. Therefore, the allegations of Coleman and Mattox of specific injury, coupled with an unambiguous, well-defined class whose members will unavoidably be subject to the allegedly unconstitutional statute would distinguish this case from *O'Shea v. Littleton,* 414 U.S. 488, 494–95 n. 3, 496, 94 S.Ct. 669, 675–76 n. 3, 676, 38 L.Ed.2d 674 (1974).

The real question here is whether Coleman and Mattox are adequate class representatives. I have already concluded that Coleman and Mattox fulfill the requirements for adequate representation. Their attorney is qualified, experienced, and able to conduct this litigation and Coleman and Mattox do not have interests that are antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Company,* 508 F.2d 239, 247, *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

■ As I noted above, plaintiffs need not rely, however, on the standing of Coleman and Mattox to bring their damages claim in order to pursue injunctive relief. At the time of the filing of the complaint, named plaintiffs Freddie and Lawrence Wiggins were in custody pursuant to the challenged provisions of the statute. Therefore, the

Wiggins brothers have standing to request injunctive and declaratory relief.[2]

## II. Exhaustion of State Remedies

■ Defendants claim that even though plaintiffs Wiggins have standing to bring this suit for declaratory and injunctive relief, the suit is barred by the doctrine set forth in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) as to them and those members of the plaintiffs' class presently in detention.

In *Preiser,* plaintiffs were state prisoners who brought a civil rights action in federal court under 42 U.S.C. § 1983, alleging that they had been deprived unconstitutionally of their good conduct time credits. Plaintiffs sought injunctive relief to restore the credits, which in each case would result in their immediate release. The Court held that a habeas corpus action under 28 U.S.C. § 2254 was plaintiffs' exclusive remedy because plaintiffs' suit attacked the very "fact and duration" of their confinement.

The Court distinguished the case from one challenging conditions of confinement, stating that a suit challenging conditions rather than the fact or duration of confinement is the proper subject of a § 1983 action. Furthermore, the Court stated that there are situations in which a plaintiff could choose to bring either a federal habeas corpus action or a § 1983 suit. *Id.* 411 U.S. at 499, 93 S.Ct. at 1841.

The Court's holding in *Preiser* is significant because the federal habeas corpus statute requires that a litigant exhaust state remedies before bringing suit in federal court, a requirement that is absent from 42 U.S.C. § 1983. Thus, in the case at bar, if defendants are correct in asserting that the *Preiser* doctrine applies to plaintiffs' suit, I would be forced to dismiss the case, requiring plaintiffs to go to state court first.

2. The mootness of the Wiggins' claims once they were released from prison does not require me to dismiss the case. This case belongs to the narrow class of cases approved in *Sosna v. Iowa, supra,* in which the termination of the named plaintiff's case does not moot the claims of the unnamed members of the class.

It also falls squarely within the exception to the *Sosna* requirement that the class be certified before the named plaintiffs' claim is mooted because it is "capable of repetition, yet evading review.". *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975).

It would appear at first blush that a suit challenging the preventive detention statute challenges the fact or duration of plaintiffs' confinement and would therefore be governed by the *Preiser* doctrine. I find, however, that the *Preiser* doctrine is inapplicable to the case before me. Since *Preiser,* the United States Supreme Court has decided two cases which limit the broad language set forth in *Preiser.* In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), a case arising in Florida that challenged the plaintiffs' pretrial detention without a probable cause hearing, the Court found the *Preiser* doctrine inapplicable because plaintiffs did not seek and the court did not order release from custody as a remedy. The only relief sought in *Gerstein* was an order that the state grant plaintiffs a probable cause hearing. *Id.* at 107 n. 6, 95 S.Ct. at 859 n. 6.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the plaintiffs brought a suit under 42 U.S.C. § 1983 challenging procedures and practices in the Nebraska prisons. The Court upheld the court of appeals' decision that *Preiser* precluded the district court from granting the remedy sought in the complaint—a restoration of good time credits. However, the Court held further that *Preiser* did not preclude the district court from examining the validity of the procedures employed in the Nebraska prison system for imposing sanctions on prisoners, including the withdrawal of good time credits. In *Wolff,* the Court held that the district court had to determine the constitutionality of the state prison system's procedures because plaintiffs had brought a damages action which was a proper subject of a claim brought pursuant to 42 U.S.C. § 1983. The Court went even further. It stated that the *Preiser* doctrine would not bar a litigant from obtaining an injunction of the prospective enforcement of unconstitutional prison regulations. The Court stated:

> Such a declaratory judgment as a predicate to a damages award would not be barred by *Preiser;* and because under that case, only an injunction restoring good time improperly taken is foreclosed,

> neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations.

*Id.* at 555, 94 S.Ct. at 2974 (emphasis added).

Thus, in order to avoid the habeas requirement of exhaustion, whatever relief I may grant, except damages, can be prospective only.

*Wright v. Cuyler,* 624 F.2d 455 (3d Cir. 1980) further supports my conclusion. In *Wright,* the court held that the *Preiser* doctrine was inapplicable to a prisoner who challenged the Pennsylvania Bureau of Corrections' application to plaintiff of eligibility standards for the state prisoner's prerelease furlough. Even though a finding by the court that the eligibility standards were unconstitutional, as applied to plaintiff, would result in shortening plaintiff's period of confinement, the court distinguished *Preiser.*

In distinguishing *Preiser,* the Third Circuit in *Wright,* like the Supreme Court in *Gerstein* and *Wolff,* emphasized the relief sought by the plaintiff. In *Wright,* the plaintiff challenged the procedures used by officials to determine eligibility for the furlough program, and demanded a fair application of standards. He did not demand admission to the program. The court stated:

> Wright's demand for fair application of the furlough eligibility criteria, as distinct from his demand for admission to the program, relates to the *manner* by which the prison authorities reach their decision and not the *outcome* of their decision. Thus, this particular claim of Wright's unmistakably goes not to the fact or duration of confinement but rather to the fairness of the decision making process. Although impartial application of the furlough criteria to Wright might increase his chance to gain admission to the furlough program, injunctive relief ordering impartial application would not intrude upon or divest the prison adminis-

tration of its ultimate discretion to grant or deny Wright's admission to the program. The *Preiser* rule is therefore in any event inapplicable.

*Id.* at 458 n. 5.

Furthermore, in *Wright,* at 624 F.2d 458 n. 5, the court cited favorably *Project Release v. Provost,* 463 F.Supp. 1033, 1038–39 (E.D.N.Y.1978). The facts and procedural posture of *Project Release* are very similar to the case before me. In *Project Release* plaintiffs were a non-profit corporation suing individually and on behalf of its members and an individual who was committed to a state psychiatric center. The named plaintiffs filed a suit under 42 U.S.C. § 1983, seeking to represent a class of "all persons who have been or may in the future be involuntarily committed to mental hospitals." The suit challenged the standards and procedures for civil commitment embodied in provisions of the New York Mental Hygiene Law. Plaintiffs sought an injunction of certain provisions that plaintiffs alleged were unconstitutional because the standards were vague and overbroad.

The court held that the *Preiser* doctrine was inapplicable because plaintiffs sought "constitutional substantive standards and procedures for commitment" rather than immediate or speedier release from confinement.

In the case at bar, plaintiffs are not seeking release from pretrial detention as a remedy. Just as in *Gerstein, Wright,* and *Project Release,* plaintiffs here challenge the standards and procedures by which they are committed rather than the fact or duration of their incarceration.

### III. Younger Abstention

Notwithstanding my conclusion that plaintiffs have standing to seek injunctive relief and that the *Preiser* doctrine is inapplicable, defendants argue that the doctrine set forth in *Younger v. Harris, supra,* and its progeny require a federal court to abstain from deciding this case.

In *Younger,* the Court held that even where a plaintiff challenged a facially invalid statute, principles of comity and federalism required a federal court to refrain from enjoining a state court's ongoing criminal proceeding if the defendant in the state court proceeding could raise the constitutionality of the statute as a defense to his prosecution. Since then, the *Younger* doctrine has been expanded considerably by the Supreme Court.

In *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Court applied the *Younger* doctrine to state civil proceedings that were akin to criminal prosecutions. The Court also expanded the definition of "ongoing proceedings" by requiring that the plaintiff in federal court who had been subject to a state trial proceeding exhaust his state appellate remedies before seeking relief in federal court.

*Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) and *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) went even further. In both cases, the Court stressed that for *Younger* abstention to apply, the federal plaintiff needs only to have had the "opportunity to raise his federal constitutional claims in adequate state court proceedings."

In *Juidice v. Vail,* the federal plaintiff, a judgment debtor, sought to have the New York contempt provisions enjoined as unconstitutional. *Younger* required the federal court to abstain because the plaintiff had failed to appear at the state contempt hearing. Had the plaintiff attended the state contempt hearing, he could have raised his constitutional claims as a defense to the proceedings. *Id.* 430 U.S. at 330, 97 S.Ct. at 1214–15. And, had the New York county trial court ruled against him, finding the contempt statute constitutional, plaintiff could have appealed the decision to the Appellate Division of the New York Supreme Court. *Id.* Even though plaintiff chose not to avail himself of the New York state court's proceedings, if he had attended, the state court proceedings would have provided him adequate opportunity to raise his federal constitutional claims in state court and his federal suit was barred by the *Younger* doctrine.

In *Moore v. Sims,* the Court stressed that for the purposes of *Younger* abstention "the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise constitutional claims." *Id.* 442 U.S. at 430, 99 S.Ct. at 2381. In that case, the Court held that *Younger* abstention was necessary because Texas law did not impose any procedural barriers to attacking the constitutionality of the Texas Family Code in state court proceedings.

As in *Juidice v. Vail,* the plaintiffs in *Moore v. Sims* ignored critical state court proceedings. In *Moore,* plaintiffs' children had been removed from their custody pursuant to an ex parte order that was entered pursuant to an allegedly unconstitutional state statute whose purpose was to protect battered children.

The plaintiffs sought relief in both the federal and state forums, creating a procedural entanglement. After the procedural morass was disentangled, and the children returned to their parents, the state filed a "Suit Affecting the Parent-Child Relationship" as provided for by the statute. The state court ordered a hearing requiring plaintiffs to show cause why one of the children should not be placed in custody of his grandparents. The plaintiffs avoided service and filed suit in federal court. The Court held that because plaintiffs could have challenged the provisions of the statute in the state proceedings, *Younger* abstention was required.

### A. Damages Suit

As far as the damages suit brought by Coleman and Mattox is concerned, the *Younger* doctrine has not been expanded to bar an action brought for damages under 42 U.S.C. § 1983 in federal court. *Juidice v. Vail,* 430 U.S. at 339 n. 16, 97 S.Ct. at 1219 n. 16.

Until now, the Supreme Court has consistently refused to require the exhaustion of state remedies in cases brought pursuant to § 1983. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). A finding that *Younger* applies to a damages action would, in effect, require a litigant to exhaust his state remedies before bringing a § 1983 action in federal court. Furthermore, in a situation like the case at bar where the state remedies that must be exhausted are judicial rather than administrative, a finding that *Younger* applies would require the litigant to bring his § 1983 suit in state court or forego his action. While such an exhaustion requirement would probably contravene the legislative intent and purpose of § 1983, it would accomplish little to further the values of comity and federalism embodied in *Younger.*

Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, the precursor to § 1983, was enacted to enforce the fourteenth amendment. Both the fourteenth amendment and the Civil Rights Act were "crucial ingredients in the basic alteration of our federal system accomplished during the Reconstruction era." *Patsy,* 457 U.S. at 503, 102 S.Ct. at 2561. The "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law 'whether that action be executive, legislative, or judicial.'" *Mitchum v. Foster,* 407 U.S. at 242, 92 S.Ct. at 2162 (quoting *Ex Parte Virginia,* 100 U.S. 339, 346, 25 L.Ed. 676 (1879). This purpose is furthered by allowing the plaintiff in a § 1983 damages action to file suit in federal court. Because there are in this case no ongoing state proceedings to which a plaintiff in a § 1983 damages action is a party, the problem of federal intervention in a state proceeding is non-existent. The mere fact that state interest in the outcome is high is not a valid reason to require *Younger* abstention.

### B. Injunctive Relief

For those plaintiffs seeking injunctive relief, *Moore v. Sims, supra,* requires an ex-

amination of the state procedures to determine whether the state proceedings afford an "adequate opportunity" to raise their constitutional claim. Under § 6324(2) of the Pennsylvania Juvenile Detention Statute, the child may be taken into custody pursuant to the laws of arrest. Once a child is in custody, § 6325 allows the correctional officer to detain the child if detention "is required to protect the person or property of others or of the child. . . .". Section 6326(a)(3) requires that a child who is to be detained be brought before the court or delivered to a detention center designated by the court "with all reasonable speed." Once a child is brought before the court or delivered to the detention facility, § 6331 requires the "intake or other authorized officer of the court" to release the child "unless it appears that his detention . . . is warranted or required under § 6325." If the child is not released, a petition shall be presented to the court within twenty-four hours of the child's admission or the next court business day.

Section 6332 requires that the court or master hold an informal hearing not later than seventy-two hours after the child is placed in detention to determine whether detention is required under § 6325 and that probable cause exists. The child, his parents or guardian shall be given reasonable notice before the hearing. Before the hearing begins, the court or master shall inform the parties of their right to counsel and to appointed counsel if they are needy. Section 6337 allows the court to continue the proceeding to enable the party to get counsel.

Under § 6335, not later than ten days after the petition is filed, an adjudicatory hearing must be held before the judge without a jury in which the prosecutor presents evidence. The juvenile has the right to present witnesses at this adjudicatory hearing. The adjudicatory hearing may be continued up to ten days and a child kept in detention for that additional period if the court determines at a hearing that evidence will be available at a later date and that the child or community will be in danger or the child will abscond if he is not detained.

After the hearing, under § 6341, the court shall make its findings as to whether the prosecutor has proven beyond reasonable doubt that the child committed the acts ascribed to him.

These procedures do not guarantee plaintiffs an adequate opportunity to raise their constitutional claim. Section 6325 allows a correctional officer to make a determination that a child should be detained. No hearing is given at this stage in which plaintiffs can raise their constitutional claims. Section 6331 requires an intake officer to review the decision to detain the child but no hearing is granted at this stage. A child can be in detention for up to seventy-two hours without having the opportunity for a hearing or to raise this constitutional challenge. Up to this point in the proceedings, therefore, the procedural situation is exactly the same as that in *Gerstein v. Pugh, supra,* a case challenging the pretrial detention of Florida inmates without a probable cause hearing. As in *Gerstein,*[3] for the first three days of detention pursuant to §§ 6325 and 6331, a child can be detained in Pennsylvania with absolutely no opportunity to challenge the constitutionality of the procedures.

Three days after apprehension, at the informal detention hearing provided for in § 6332, the juvenile has, for the first time, the opportunity to challenge the constitutionality of his detention. Immediately before the detention hearing, the court or master must inform the child for the first time that he has the right to be represented by counsel and to have counsel appointed. Presumably, at this point the detained child must choose between waiving his right to obtain counsel and requesting the continuance provided for in § 6337 so that he can obtain counsel. The statute is unclear as to how much longer the child can be detained awaiting the appointment of counsel.

---

**3.** In *Gerstein,* the Court refused to abstain on *Younger* principles because there was no hearing in which plaintiffs could raise their constitutional challenges.

Even assuming that the child has counsel at his seventy-two hour detention hearing, if the juvenile raises a constitutional challenge to his detention at the hearing and it is denied, an appeal from a denial will be quashed as interlocutory. Pennsylvania courts have consistently held that an appeal in a delinquency case is interlocutory until after the disposition stage, the equivalent of sentencing. *Commonwealth v. Kiker,* 289 Pa.Super. 188, 432 A.2d 1115 (1981). Specifically, the courts have quashed appeals from detention orders as interlocutory. *In the Matter of Brown,* 268 Pa.Super. 562, 408 A.2d 1146 (1979). And, once the juvenile is released from confinement, Pennsylvania courts will dismiss as moot appeals from the decision to detain. *In the Interests of Del Signore,* 249 Pa.Super. 149, 375 A.2d 803 (1977).

An individual juvenile cannot raise a constitutional challenge to the Juvenile Act on behalf of a class in the course of the juvenile court proceedings described above because Pennsylvania Rule of Civil Procedure 1703 requires that class actions be initiated by the filing of a separate complaint. Therefore, the doctrine recognized in federal courts of "capable of repetition yet evading review" which allows a named plaintiff to represent a class even though his claim has become moot will not be applicable. Assuming the Pennsylvania courts recognize that doctrine, the only recourse in state court would be for the plaintiff to institute a separate section 1983 suit in state court. Requiring the plaintiffs to institute a separate action in state court, however, would go well beyond the *Younger* doctrine. As explained above, a requirement that a plaintiff must exhaust his state judicial remedies has so far consistently been rejected by the Supreme Court.

Once a juvenile appears at the adjudicatory hearing required by § 6335, the child may have already been detained more than twenty days without an opportunity to appeal a finding by the lower court or master that his detention is constitutional. At the adjudicatory hearing, juveniles have challenged the admissibility of statements and identification on the grounds that they

were obtained during their detention which did not comply with the mandates of the statute. *Commonwealth v. Bey,* 249 Pa.Super. 185, 375 A.2d 1304 (1977), *In the Interest of Schirner,* 264 Pa.Super. 185, 399 A.2d 728 (1979), *In the Interest of White,* 264 Pa.Super. 190, 399 A.2d 731 (1979). Presumably, juveniles would be permitted to raise at the adjudicatory hearing the question of the constitutionality of their detention indirectly in order to challenge the admissibility of statements and identifications obtained during the detention. And, presumably, after a finding of delinquency and disposition by the hearing judge or master, a juvenile could appeal the court's decision to admit the statements or identification obtained as a result of his allegedly unconstitutional detention. Where the juvenile's challenge to the constitutionality of his detention, however, does not attack the admissibility of evidence tending to establish guilt or innocence, the challenge will not be heard at the adjudicatory hearing because it will be irrelevant.

■ It is clear from the procedures described above that the only opportunity a juvenile has to attack the constitutionality of his detention directly is at the § 6332 informal detention hearing. Because *Huffman v. Pursue, supra,* and *Juidice v. Vail, supra,* stress the importance of pursuing state appellate remedies, and no such remedies exist in Pennsylvania, I find that the opportunity afforded to the plaintiffs in Pennsylvania state courts is inadequate.

■ Furthermore, because plaintiffs' constitutional challenge to the preventive detention statutes is an attack on a collateral issue which does not affect the merits of the prosecution, federal injunctive or declaratory relief in this case would not be the intrusive interference which *Younger* sought to bar. *Fernandez v. Trias Monge,* 586 F.2d 848 (1st Cir.1978). Although the collateral nature of a constitutional attack is not determinative of whether *Younger* abstention is appropriate or not, *State of New Jersey v. Chesimard,* 555 F.2d 63 (3d Cir.1977) (*en banc*), when an attack which is

collateral to the merits of the prosecution is combined with a lack of procedures in state court by which to challenge the constitutionality of the allegedly unconstitutional statute, *Younger* abstention is inappropriate. *Gerstein v. Pugh, supra, Fernandez v. Trias Monge, supra.*

In *Gerstein v. Pugh,* a case challenging the absence of a probable cause hearing, the Court affirmed the district court's finding that *Younger* abstention was inappropriate by stating:

> The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger v. Harris* ... the injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.

Defendants argue that even if the *Younger* doctrine does not require abstention I should exercise my discretion to abstain under the doctrines set forth in *Railroad Commissioner v. Pullman, supra,* or *Burford v. Sun Oil Company, supra.*

■ *Pullman* abstention "may be invoked where there is an unsettled question of state law, the resolution of which would affect the decision of a federal constitutional issue, either by obviating the need to decide it or by changing the light in which it must be viewed." *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743 (3d Cir. 1982), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285.

■ Plaintiffs argue that *Pullman* abstention is inappropriate here for two reasons. First, they argue that since they are claiming that preventive detention *per se,* violates the due process clause of the fourteenth amendment, a state court's narrowing interpretation of the statute would neither resolve nor affect the issue. Secondly, they argue that even if the fourteenth amendment does not prohibit all preventive

detention, the statute violates due process because it is so vague and overbroad in its absence of procedures and standards of proof for determining whether a juvenile presents a danger to the community that it cannot be cured short of rewriting the statute.

Although I disagree that I will necessarily reach the question of whether preventive detention is unconstitutional *per se,* I agree with plaintiffs that the statute is so clearly lacking in standards that it would be impossible for the Pennsylvania Supreme Court to narrow the statute without rewriting it.

I refuse to exercise my discretion to abstain under the *Pullman* doctrine.

First, it would be useless to allow the State Supreme Court to attempt to narrow the statutory provisions in question. Secondly, this motion to abstain was filed almost two years after the filing of the complaint, and thirdly, my withdrawal from the adjudication at this point would cause an extended and unwarranted delay in the ultimate disposition of the case. *Frederick L. v. Thomas,* 557 F.2d 373, 383 (3d Cir. 1977).

■ *Burford* abstention is appropriate "where a difficult question of state law is presented which involves important state policies or administrative concerns." *Heritage Farms, Inc.,* 671 F.2d at 746. It has two components: a procedural and a substantive one. The procedural component requires a federal court to defer to a specialized state regulatory agency for issues entrusted to the agency. *Burford v. Sun Oil Company, supra.*

■ The substantive component allows a federal court to abstain where difficult questions of state law bear on policy problems "of substantial public import whose importance transcends the results in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). *Burford* abstention is a limited doctrine which should not be applied "merely because resolution of a federal question may result in the

overturning of a state policy." *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678 n. 5, 54 L.Ed.2d 618 (1977). Clearly, the federal constitutional concerns in this case outweigh the state's interest in detaining juveniles before trial. Therefore, I refuse to exercise my discretion to abstain under the *Burford* doctrine.

For the reasons explained above, I shall deny defendant's motion for judgment on the pleadings and/or for partial decertification of the plaintiffs' class.

### Appendix to Opinion of the Court

The following are the statutory provisions challenged by plaintiffs. In its pertinent part 42 Pa.Cons.Stat.Ann. § 6325 reads as follows:

A child taken into custody shall not be detained or placed in shelter care prior to the hearing on the petition unless his detention or care is required to protect the person or property of others or of the child or because the child may abscond or be removed from the jurisdiction of the court ...

In its pertinent portions 42 Pa.Cons.Stat. Ann. § 6335 reads as follows:

*General rule.*—After the petition has been filed the court shall fix a time for hearing thereon, which, if the child is in detention or shelter care shall not be later than ten days after the filing of the petition. If the hearing is not held within such time, the child shall be immediately released from detention or shelter care. A child may be detained or kept in shelter care for an additional single period not to exceed ten days where:

(1) the court determined at a hearing that:

(i) evidence material to the case is unavailable;

(ii) due diligence to obtain such evidence has been exercised; and

(iii) there are reasonable grounds to believe that such evidence will be available at a later date; and

(2) the court finds by clear and convincing evidence that:

(i) the life of the child would be in danger;

(ii) the community would be exposed to a specific danger; or

(iii) the child will abscond or be removed from the jurisdiction of the court.

The court shall direct the issuance of a summons to the parents, guardian, or other custodian, a guardian ad litem, and any other persons as appear to the court to be proper or necessary parties to the proceeding, requiring them to appear before the court at a time fixed to answer the allegations of the petition. The summons shall also be directed to the child if he is 14 or more years of age or is alleged to be a delinquent. A copy of the petition shall accompany the summons.

42 Pa.Cons.Stat.Ann. § 6341 reads as follows:

(a) *General rule.*—After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child, or if the petition alleges that the child is delinquent, whether the acts ascribed to the child were committed by him. If the court finds that the child is not a dependent child or that the allegations of delinquency have not been established it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.

(b) *Finding of delinquency.*—If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and it shall then proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child is in detention, to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation and to make and file its findings thereon. In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the

child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered.

(c) *Finding of dependency.*—If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

(d) *Evidence on issue of disposition.*—In disposition hearings under subsections (b) and (c) all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of information given in confidence need not be disclosed.

(e) *Continued hearings.*—On its motion or that of a party the court may continue the hearings under this section for a reasonable period to receive reports and other evidence bearing on the disposition or the need for treatment, supervision or rehabilitation. In this event the court shall make an appropriate order for detention of the child or his release from detention subject to supervision of the court during the period of the continuance. In scheduling investigations and hearings the court shall give priority to proceedings in which a child is in detention or has otherwise been removed from his home before an order of disposition has been made.