613 F.Supp. 775 (1985)
A.T., R.B., K.A., Individually and on Behalf of all Persons Similarly Situated, Plaintiffs,
v.
COUNTY OF COOK, ILLINOIS, and James M. Jordan, Superintendent, Cook County Juvenile Temporary Detention Center, Defendants.
No. 85 C 0325.
United States District Court, N.D. Illinois, E.D.
July 2, 1985.
*776 Benjamin S. Wolf, Harvey Grossman, Chicago, Ill., for plaintiffs.
Terry McDonald, Ronald Kammer, Asst. State's Attys., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
ASPEN, District Judge:
Plaintiffs in this civil rights class action seek to enjoin defendants' practice of indefinitely detaining alleged juvenile delinquents even though a state court judge has ordered that they be "released upon request" of a responsible adult. Plaintiffs sue under 42 U.S.C. § 1983, alleging many constitutional violations. Defendants have moved to dismiss on three grounds: the doctrine of quasi-judicial immunity, the failure to state a claim against defendant Cook County ("the County") and the doctrine of abstention. For the following reasons, this motion is denied.

Facts
The complaint's allegations, which for purposes of this ruling we assume to be true, paint a sad picture of children regularly being detained from a few months to two years, even though a state court judge had ruled that they do not meet the statutory criteria for detention. A technicality explains this seemingly bizarre state of affairs. In each case a judge has ordered the juvenile "released upon request" of the child's parent or other responsible adult. But for one reason or another, no adult shows up, and the child languishes in jail.[1]
Illinois has an extensive statutory procedure for prosecution and detention of juveniles. See generally Ill.Rev.Stat. ch 37, ¶ 701-1 et seq. (1983). Plaintiffs apparently have fallen through a crack in that system. In general the "Juvenile Court Act," id., frowns upon detention of children. See ¶ 701-2(1). Children alleged to be delinquents[2] must be given a preliminary hearing within thirty-six hours after being initially detained in a detention home or jail. ¶ 703-5(1). At such a hearing the court must determine whether there is probable cause to believe that the child is delinquent as defined by ¶ 702-2. If no probable cause does exist, detention is still not automatic, and, in fact, is disfavored. To continue detention the Court must find on the basis of evidence that:
... it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another that the minor be detained or placed in a shelter care facility or that he is likely to flee the jurisdiction of the court....
¶ 703-6(2). Otherwise, the child must be released. For alleged delinquents, the Court must consider four factors in making the determination of "immediate and urgent necessity":
(a) the nature and seriousness of the alleged offense; (b) the minor's record of delinquency offenses, including whether the minor has delinquency cases pending; (c) the minor's record of willful failure to appear following the issuance of a summons or warrant; and (d) the availability of non-custodial alternatives, including the presence of a parent, guardian or other responsible relative able and willing to provide supervision and care for the minor and to assure his compliance with a summons.
Id. If ordered temporarily detained, the child is entitled to an adjudicatory hearing within ten judicial days of the preliminary detention order; if not detained, the child is entitled to such a hearing within thirty days. ¶ 704-2. At such a hearing, the judge determines whether the child should be made a ward of the State. ¶ 704-8. If *777 the court judges the child to be its ward, it must then conduct a "dispositional hearing" at which it considers various options, such as probation or conditional discharge, placement with an appropriate governmental agency or commitment to jail. See ¶¶ 705-1, 705-2(a).
The complaint alleges that each of the plaintiffs has been detained at the Audy Home. In each case, a preliminary hearing was held, in which a judge ruled that the child did not meet the specific statutory criteria for detention set forth in ¶ 703-6(2). The judge ordered each "released upon request" of his or her parents or some other adult, such as a relative or probation officer. Tragically, either no one shows up or someone shows up only several months later. As a result, the child remains confined in the Audy Home for months until an adult shows up or a hearing on the merits is held, whichever occurs first.[3] Plaintiffs allege that this has been happening frequently. They allege several constitutional violations. First, they charge that the continued detention amounts to punishment without trial in violation of due process. Similarly, the unique facts allegedly amount to a violation of the Eighth Amendment right to bail. Fourth Amendment and First Amendment rights are also allegedly violated by searches and other restrictive measures which flow from the fact of continued detention. Plaintiffs seek only declaratory and injunctive relief now.
Defendant James Jordan ("Jordan"), Superintendent of the Audy Home, claims that the doctrine of quasi-judicial immunity insulates him from the relief requested. He and the County also argue that the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 760, 27 L.Ed.2d 669 (1971), and its progeny commands the Court to dismiss the suit. Finally, the County claims that the complaint alleges relief against it only under a theory of respondeat superior, and thus Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), bars relief against it.

Abstention
The Younger doctrine originally held that a federal court must, absent exceptional circumstances, dismiss a claim for injunctive relief against pending state criminal proceedings. The Supreme Court has since expanded the doctrine to include cases of a quasi-criminal nature involving states as parties and implicating important state interests. See Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (abstention from enjoining state bar disciplinary proceedings); Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state emergency child abuse proceedings); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state contempt proceedings); Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (public nuisance proceedings). Several policies underlie the doctrine[4] and must inform our application of it. One is the traditional doctrine of *778 equity that a court should not issue an injunction when an adequate remedy at law exists and should not easily restrain a criminal prosecution. Huffman, 420 U.S. at 600-01, 95 S.Ct. at 1206, citing, Younger v. Harris, 401 U.S. 37 at 43, 91 S.Ct. 746 at 750, 27 L.Ed.2d 669. Thus, one focus of our inquiry is whether the ongoing state proceeding provides an adequate opportunity to raise federal constitutional issues. See, e.g., Middlesex County, 457 U.S. at 432, 102 S.Ct. at 2521. Another policy underlying Younger is the notion of "comity," that is, a "proper respect for state functions," such that in vindicating federal rights we must "always endeavor [] to do so in ways that will not unduly interfere with the legitimate activities of the State." Younger, 401 U.S. at 44, 91 S.Ct. at 750.
Three questions must be addressed. First, is there some ongoing state judicial proceeding? See Middlesex County, 457 U.S. at 432, 102 S.Ct. at 2521. This question is crucial because "`the relevant principles of equity, comity, and federalism "have little force in the absence of a pending state proceeding."'" Huffman, 420 U.S. at 602-03, 95 S.Ct. at 1207, quoting Steffel v. Thompson, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). When no state proceeding is pending, federal intervention does not duplicate legal proceedings, disrupt the state system of justice or insult the state's abilities to enforce constitutional principles. Id. Second, if proceedings are pending, we must decide whether they implicate important state interests. Middlesex County, 457 U.S. at 432, 102 S.Ct. at 2521. Finally, we must see whether the state proceedings give an adequate opportunity to raise constitutional challenges. Id.[5]
The second question yields the easiest answer. The detention proceedings in issue are criminal in nature. And the state obviously has a strong interest in figuring out what to do about alleged delinquents and how to go about doing it.[6] Even so, we do not think the first or third questions yield answers favoring abstention.
It is true that the state proceedings are pending in a strict sense. That is, juveniles have been ordered "released upon request," and wait in the Audy Home for their adjudications on the merits. But in another sense this case affects nothing in that state court proceeding. While they wait, nothing is happening in court. Unlike the Younger line of cases, this case does not challenge the state juvenile detention statute or procedures itself. Nor do plaintiffs seek to enjoin or delay those proceedings or interfere with any state decision on the merits of whether they are delinquents subject to detention. Rather, the case addresses the fact of plaintiffs' indefinite pretrial confinement, not the underlying proceedings. The policy of comity does not warrant abstention here. Federal intervention will not duplicate state proceedings, disrupt the state court determination on the merits or insult the competence of the state courts. The case is therefore like Gerstein v. Pugh, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975), which was also a challenge to pretrial detention procedures. There plaintiffs challenged the state's practice of jailing them on the basis of a prosecutor's information alone, without a judicial finding of probable cause. The Supreme Court held that Younger did not bar the suit, because the injunction did not interfere with the criminal prosecutions themselves, but rather ordered only that preliminary hearings be *779 held. 420 U.S. at 108 n. 9, 95 S.Ct. at 860; see also Coleman v. Stanziani, 570 F.Supp. 679, 687-88 (E.D.Pa.1983) (no abstention where challenge to procedures for pretrial detention of juveniles is collateral to merits of prosecution). Similarly, the challenge here is only to the fact of the indefinite pretrial detention and asks that procedures be developed to deal with this fact. Plaintiffs are asking for something akin to another hearing to determine how to deal with the children who are not "claimed." The procedures on the merits are left intact.
Defendants see the case differently as a direct invasion of the state judicial system. They emphasize that they are not detaining plaintiffs who have simply been ordered "released." Rather, a state court judge has ordered each plaintiff "released upon request" of a responsible adult. This purportedly complies with ¶ 703-6(2)(d), which mandates that the judge consider non-custodial alternatives in deciding whether the juveniles should be detained. That is, the state court has found that each child can be released only upon fulfillment of a condition precedent, the appearance of an adult, just as an accused felon can be released only upon his payment of bail. Detention here is no worse than continued pretrial detention of a defendant who cannot make bail, argue defendants. They conclude that this case in effect seeks to reverse the orders of these judges and thereby interferes unduly with the state pretrial detention process.
The defendant's approach is too formalistic, misreads the complaint and ignores key elements of the Juvenile Court Act. Plaintiffs are not challenging the judges' decisions to "release them upon request." They are not challenging the propriety of considering "the availability of non-custodial alternatives, including the presence of a parent ..." ¶ 703-6(2)(d). What they are challenging is what happens after a judge has made this determination and decided that such non-custodial alternatives do exist. He or she orders them released, but then those alternatives fail to materialize in the form of a relative who comes to pick up the child. The children then languish in the Audy Home. No procedures exist to cope with this unforseen event. Months may pass before a final determination is made. That is what plaintiffs challenge. We disagree with defendants that such a challenge interferes with ongoing state proceedings. We do not think that when the judge ordered the plaintiffs "released upon request" he or she also implicitly ordered them "held indefinitely if no one shows up to so `request.'" Indeed, such an implicit order would violate the Juvenile Detention Act itself, and for that reason we should construe the order to comply with the Act. As noted earlier, when judges order children detained, the statute requires that an "adjudicatory hearing" be held within ten days. ¶ 704-2. Yet judges have allegedly not scheduled such hearings themselves. If, as the Younger doctrine teaches, we must presume that state judges can competently decide federal constitutional issues, see, e.g., Middlesex County, 457 U.S. at 432, 102 S.Ct. at 2521, it follows that we must presume that they can apply state law at least as well. Assuming that they are not ignoring the state law regarding dates for hearings, we must assume that the judges who entered the "release upon request" orders were not ordering that the children be "detained indefinitely upon no request." If they were, they would have scheduled such a hearing contingent on the failure of a responsible adult to show up. In sum, then, this suit does not seek to reverse or interfere with orders of the state courts. Rather, it deals with the constitutional consequences of the failure of those orders to be fulfilled.
Even if this suit did interfere more directly with ongoing state judicial proceedings, we are not persuaded that those proceedings provide plaintiffs an adequate opportunity to challenge their indefinite detention. Indeed, the gist of the complaint is that there are no certain procedures available within the Juvenile Court Act through which plaintiffs could challenge their indefinite detention. Plaintiffs have fallen through a crack in that system. Defendants *780 have pointed out no procedures plaintiffs can use. Even if there were such procedures, it does not appear that the juvenile's objections could effectively be raised on appeal. The detention order is interlocutory, cf. In re J.N., 91 Ill.2d 122, 126-27, 61 Ill.Dec. 776, 778-79, 435 N.E.2d 473, 475-76 (1982) (in proceedings under the Juvenile Court Act the dispositional order is the final appealable order), and by the time the issues here could be raised in appeal, they would probably be moot. Viable appellate remedies have been held crucial to the decision of whether state procedures are adequate.[7]See Coleman v. Stanziani, 570 F.Supp. at 687. Moreover, the plaintiffs challenge far more than the allegedly unlawful fact of their confinement; they challenge many of the conditions of their confinement as well. Defendants have not suggested how these allegations can be dealt with in the ongoing state detention proceedings.
Because plaintiffs are not asking this Court to interfere unduly with ongoing state proceedings, because our intervention will not frustrate concerns of comity, and because the state proceedings cannot adequately address the full scope of plaintiffs' claims, abstention is improper. Abstention appears unwarranted for another reason as well. The complaint alleges that plaintiffs' parents or guardians use the loophole in the "release upon request" procedures to punish plaintiffs, that is, to "teach them a lesson," and that defendants and the state court judge often know this, yet do nothing. Complaint, ¶ 18. Assuming this very serious allegation to be true, we believe that this case also comes within the "bad faith" or "other extraordinary circumstances" exception to Younger abstention. See above at n. 5. For all of the above reasons, then, we do not abstain.

Immunity
Defendant Jordan argues that he is entitled to judicial immunity because he was merely following court orders by not releasing the juveniles when no responsible adult "requested" that he do so. See Doe v. McFaul, 599 F.Supp. 1421, 1430-32 (D.Ohio 1984) (director of corrections who follows even unconstitutional judicial order shares immunity of judge who issued the order). However, Doe and related cases dealt only with immunity from damages. Plaintiffs seek only injunctive and declaratory relief.[8] The Supreme Court recently held that judicial immunity does not bar claims for declaratory or prospective injunctive relief. Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Jordan has not tried to distinguish Pulliam, and that failure proves fatal, for Pulliam appears to control here.
Jordan changes tack in his reply brief. Implicitly conceding the Pulliam issue, he essentially argues under Fed.R. 12(b)(6) that plaintiffs have failed to allege a claim which supports declaratory or injunctive relief. We think plaintiffs' allegations concerning the fact of their indefinite confinement plainly do state constitutional claims. Jordan does not contest this in their brief. Instead he challenges only the parts of the complaint in which plaintiffs attack the conditions of their confinement. Jordan might be correct that plaintiffs' allegations on their face seem to fail to state a claim under Bell v. Wolfish, 441 U.S. 520, 99 *781 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[9] But Bell is premised on the presumption that the pretrial detainees are being lawfully jailed. That premise is allegedly absent here. Moreover, Bell involved detention of adults, not children with special needs. For now we express no opinion on whether Bell disposes of plaintiffs' conditions challenges. Jordan's arguments concerning Bell arose for the first time in his reply and are not directly related to the grounds of the pending motion; most importantly, plaintiffs have not had a chance to respond fully to this argument. Should Jordan wish to pursue what is essentially a motion under Rule 12(b)(6) premised on Bell, he may file such a motion with a supporting memorandum, and we will set a briefing schedule. For now we hold only that Jordan is not entitled to judicial immunity to the extent plaintiffs' claim seeks declaratory and injunctive relief.

Respondeat Superior
Defendant County argues that it is named as a defendant only under a theory of respondeat superior, and that it must therefore be dismissed under Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The County is correct that Monell immunizes it from liability simply because one of its employees violates § 1983. Id. at 691, 98 S.Ct. at 2036; Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir.1985). However, the County can be held liable if its official policies or unwritten customs caused the alleged constitutional violations. See Monell, 436 U.S. at 690, 91, 98 S.Ct. at 2036; Strauss, at 767.
The complaint here plainly alleges such an official policy. It alleges that the practice of detaining juveniles indefinitely is common. It backs up that allegation with the circumstances of three named plaintiffs and three purported class members. It alleges that this practice has continued for well over a year, and that it constitutes the official policy or practice of the County. It alleges that Jordan, an official of the County, "is the highest level decision-maker with authority over the Audy Home, and he determines the policies of the Audy Home with respect to plaintiffs' release and the conditions of their confinement." Complaint, ¶ 17. These allegations suggest that the practice of indefinite detention is at least the custom, if not the policy, of Jordan. As the highest official of the Audy Home, Jordan's "edicts or acts may fairly be said to represent official policy," Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38, such that the County can be held liable for his actions and policies. See Reed v. Village of Shorewood, 704 F.2d 943, 953 (7th Cir.1983) (government necessarily acts through agents and thus court's job is to identify the official with enough authority such that his or her acts reflect government policy).
In seeking to avoid Monell liability, the County once again tries to shield itself with the state courts' "release upon request" orders. It claims that it is merely following the letter of the "release upon request" orders, and this "policy" of following court orders cannot be said to be unconstitutional. We disagree. As we noted earlier, the complaint does not attack these orders, but rather the consequences of the failure of responsible adults to show up to pick up the children. It attacks Jordan's repeated failure to do anything about these children but keep them locked up. Jordan has not been ordered to lock up the children for up to a year, as we noted earlier.
*782 Finally, the County argues alternatively that even if a policy is alleged, it is not alleged with enough particularity under the Seventh Circuit's recent decision in Strauss. Strauss repeated the oft-cited rule of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that courts must construe pleadings liberally, and that dismissal is improper "`unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Strauss, at 767, quoting Conley, 355 U.S. at 45-46, 78 S.Ct. at 102. But the Court went on to hold that in § 1983 cases alleging municipal policy, conclusory allegations of policy will not suffice. At 767-69. The complaint cannot merely regurgitate the Monell requirement of official policy. At 768. Rather "some fact indicating the existence of some such policy must be pled." Id. at 768. This burden is not meant to be heavy.
We do not mean to imply that a plaintiff must plead in greater detail, but merely that the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injury.
Id. at 769.
Plaintiffs here have pled "some fact or facts tending to support" their allegation that a County policy exists. Unlike plaintiff in Strauss, who could allege no more than his claim as evidence of broader municipal custom, slip op. at 4, plaintiffs here have alleged six examples of the indefinite detention. They have also detailed the statutory scheme which makes such detentions plausible, even likely, because of an unforseen loophole in that scheme. They allege that these detentions have occurred continuously well over a year, thus bolstering their allegation that the custom is well established. In short, the complaint here easily satisfies the particularity demanded by Strauss.
Defendants' grounds for dismissing the suit lack merit, and their motion is denied. It is so ordered.
NOTES
[1] Actually, the children are confined in the "Cook County Temporary Detention Center," more commonly known as "the Audy Home." While this is not a "jail" in the usual sense, it is a "jail" in the sense that the children are confined and deprived of several of their freedoms.
[2] A "delinquent" is defined in ¶ 702-2 as a minor who before his or her seventeenth birthday "has violated or attempted to violate, regardless of where the act occurred, any federal or state law or municipal ordinance."
[3] The allegations concerning named plaintiff "A.T." exemplify the preceding story: Age 14, she was arrested and charged with delinquency in November 1984. On November 7, 1984, a judge of the juvenile court found that she did not meet the statutory criteria for detention at the Audy Home and ordered her "released upon request" of her mother. But as of January 14, 1985, when the complaint was filed, she remained at the Audy Home and had not received trial on the merits. As a result, she is not receiving the special educational services she needs. Complaint, ¶ 11. Similarly, class member M.W. is severely retarded, was held at the Audy Home for over one year even though he was ordered "released upon request of probation officer." During his detention, he did not receive the special education he needs. Complaint, ¶ 15.
[4] These policies have been extensively debated and often criticized in academia. A nationally renowned authority recently has argued forcefully that the Younger doctrine violates principles of separation of powers in that the Court was substituting its policy judgments for those of Congress in carving out exceptions to broad congressional grants of jurisdiction. See M. Redish, Abstention, Separation of Powers, and the Limits of the Judicial Function, 94 Yale L.J. 71 (1984).
[5] There is a narrow category of exception to Younger abstention. If the state proceeding is brought in bad faith or for harassment, abstention is improper. Other "extraordinary circumstances" might also counsel against abstention. Younger, 401 U.S. at 53-54, 91 S.Ct. at 755.
[6] We also agree with the County that it has a strong interest in not merely throwing the children out onto the street. However, we disagree with its conclusion, see Memorandum in Support of Motion to Dismiss, at 6, that the state therefore has an interest in detaining the children indefinitely. This argument intimates that the County is doing these children a favor by keeping them in the Audy Home for months. The County does not have an interest in simply doing nothing when a judge orders the children released upon request and no one shows up.
[7] Whether a separate state suit could lie to redress the grievances is irrelevant. There is in general no exhaustion requirement for § 1983 cases. See, e.g., Coleman, 570 F.Supp. at 685-88; Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). For Younger abstention purposes, we need only determine whether the ongoing state proceeding provides adequate remedies.
[8] The complaint reserves plaintiffs' rights to seek damages later. For now we express no opinion on whether Jordan would be immune from damages, as the issue is not ripe. The County does not raise such a defense, probably because an attempt to do so would be fruitless. See Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city does not share qualified immunity defense of its officers); Coleman, supra, 470 F.Supp. at 681 (county does not share immunity enjoyed by defendant judges from damages).
[9] Bell held that pretrial detainees may not be "punished," but that their lawful detention is not unconstitutional even though many of their rights are severely curtailed. Here, many of plaintiffs' conditions complaints flow from the fact of their confinement. For example, they are subject to search, have restricted visiting hours, cannot attend the school of their choice, etc. However, as noted in the text, if the fact of plaintiffs' confinement is unlawful, so might be the conditions of confinement which flow from this fact and which might otherwise be lawful under Bell.