624 F.2d 455
 55 A.L.R.Fed. 198
 WRIGHT, Thomas, Appellant,
v.
CUYLER, Julius T. et al., Individually and in his official
capacity as Superintendent of the State
Correctional Institution at Graterford,
Appellees.
WRIGHT, Thomas, Appellant,
v.
ROBINSON, William B., Commissioner of the Bureau of
Corrections of the Commonwealth of Pennsylvania; Cuyler,
Julius T., Superintendent of the State Correctional
Institution at Graterford, Pa.; Sims, Daniel T., Deputy
Superintendent of Treatment of the State Correctional
Institution at Graterford, Pa.; Reid, Lawrence, Director of
Treatment of the State Correctional Institution at
Graterford, Pa., Appellees.
 Nos. 79-1223, 79-1224.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) April 24, 1980.
Decided June 30, 1980.
As Amended July 8, 1980.
 
 Carl Vaccaro, John O. J. Shellenberger, Asst. Attys. Gen., Eastern Regional Director, Edward G. Biester, Jr., Atty. Gen., Philadelphia, Pa., for appellees.
 Robert T. Cohen, John W. Morris, Pierson, Jones, Nelson & Shalita, P. C., Philadelphia, Pa., for appellant.
 Before ALDISERT, WEIS and GARTH, Circuit Judges.OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 These are two consolidated appeals taken by Thomas Wright from the district court's dismissal of his two civil rights actions. The district court determined that Wright, a prisoner, was attempting to challenge the duration of his confinement, and was therefore required, under Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), to exhaust state remedies. We reverse.
 
 I.
 
 2
 Wright is a prisoner in the Pennsylvania State Correctional Institute at Graterford. He applied in June 1977 for admission to the home furlough program[1] but was rejected. According to Wright, he was told initially, contrary to fact, that he was not accepted for prerelease furlough because he had not yet served the necessary time on his sentence. App. at 54.[2] Wright applied again in August 1977, and again his application was denied. This time he was told that the prison authorities believed that he would still be a security risk if released on furlough, and that he should reapply after he had served another year in confinement. Id. at 55.
 
 
 3
 Wright thereupon filed two actions in district court, under 42 U.S.C. § 1983. The two actions were consolidated.[3] Wright alleged that he was denied due process because his application for home furlough was arbitrarily and capriciously denied. Named as defendants were Julius Cuyler, the Graterford superintendent; Daniel Sims, the deputy superintendent; Lawrence Reid, the Graterford director of treatment; and William B. Robinson, Commissioner of the Pennsylvania Bureau of Corrections. Wright sought compensatory and punitive damages, as well as declaratory and injunctive relief to require the standards for admission to the home furlough program to be applied fairly to him, to require his admission to the program, and to prevent retaliation against him. The defendants moved to dismiss his complaints or in the alternative for summary judgment. On January 3, 1979, the district court dismissed Wright's equitable claims without prejudice to Wright's reasserting them in a petition for habeas corpus following the exhaustion of available state remedies, and similarly dismissed Wright's damages claims without prejudice to a later section 1983 action following the exhaustion of state remedies. This appeal followed.
 
 II.
 
 4
 The district court did not write any opinion setting forth its reasons for dismissing Wright's actions. However, the basis for the district court's disposition can be gleaned from the case citations appearing in its January 3, 1979 order from which appeal is taken.[4] The district court apparently based its dismissals on its conclusion that Wright, by seeking to secure admission to the home furlough program, was thereby affecting or attempting to reduce the duration of his confinement. Citing the rule announced in Preiser, therefore, the district court held that Wright must exhaust state remedies before bringing any federal action. We disagree.
 
 The Supreme Court held in Preiser that:
 
 5
 when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.
 
 
 6
 411 U.S. at 500, 93 S.Ct. at 184. The program into which Rodriguez was denied entry, which denial the Court held could not be challenged directly under section 1983, was described as follows:
 
 
 7
 (A) prisoner serving an indeterminate sentence may elect to participate in a conditional-release program by which he may earn up to 10 days per month good-behavior-time credit toward reduction of the maximum term of his sentence. Rodriguez elected to participate in this program. Optimally, such a prisoner may be released on parole after having served approximately two-thirds of his maximum sentence (20 days out of every 30); but accrued good-behavior credits so earned may at any time be withdrawn, in whole or in part, for bad behavior or for violation of the institutional rules.
 
 
 8
 411 U.S. at 477-78, 93 S.Ct. at 1830 (citation omitted). Thus Preiser involved a program that would enable the prisoner to be granted early parole and to be released from prison before the end of his sentence.
 
 
 9
 The Court distinguished cases that had allowed direct actions under section 1983 challenging the conditions in prisons:
 
 
 10
 The respondents place a great deal of reliance on our recent decisions upholding the right of state prisoners to bring federal civil rights actions to challenge the conditions of their confinement. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). But none of the state prisoners in those cases was challenging the fact or duration of his physical confinement itself, and none was seeking immediate release or a speedier release from that confinement the heart of habeas corpus. In Cooper, the prisoner alleged that, solely because of his religious beliefs, he had been denied permission to purchase certain religious publications and had been denied other privileges enjoyed by his fellow prisoners. In Houghton, the prisoner's contention was that prison authorities had violated the Constitution by confiscating legal materials which he had acquired for pursuing his appeal, but which, in violation of prison rules, had been found in the possession of another prisoner. In Wilwording, the prisoners' complaints related solely to their living conditions and disciplinary measures while confined in maximum security. And in Haines, the prisoner claimed that prison officials had acted unconstitutionally by placing him in solitary confinement as a disciplinary measure, and he sought damages for claimed physical injuries sustained while so segregated. It is clear, then, that in all those cases, the prisoners' claims related solely to the States' alleged unconstitutional treatment of them while in confinement. None sought, as did the respondents here, to challenge the very fact or duration of the confinement itself. Those cases, therefore, merely establish that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody. Upon that understanding, we reaffirm those holdings.
 
 
 11
 411 U.S. at 498-99, 93 S.Ct. at 1840.
 
 
 12
 We believe that a prisoner in Wright's position, who is challenging his failure to be admitted to the Pennsylvania home furlough program, is attacking not the ultimate duration of his confinement but rather the conditions under which he is confined. The administrative regulations define a home furlough as:
 
 
 13
 authorized leave of an inmate . . . for a period not to exceed seven (7) consecutive days for the purpose of furthering an inmate's rehabilitative programs (after which t)he inmate is required to return . . . at a designated time.
 
 
 14
 App. at 26. Although a prisoner's total number days actually spent behind bars can technically be reduced by the number of days during which he is out of prison on furloughs, it cannot be said that occasional short furloughs such as these reduce the duration of confinement in the same way as did the good time credits at issue in Preiser, where the credits would have had the effect of terminating the prisoner's sentence at an earlier calendar date. We therefore hold that the eligibility or lack of eligibility for temporary home furloughs in Pennsylvania is a condition of one's confinement,[5] which may be challenged directly in a section 1983 action without resort to habeas corpus and its attendant requirement for exhaustion of state remedies.[6]
 
 III.
 
 15
 While the district court clearly rested its judgment on Preiser, see note 4 supra, the defendants also argued that Wright had failed to state a claim upon which relief can be granted. We will not reach the merits of this contention at this time because it is for the district court to resolve in the first instance.IV.
 
 
 16
 We therefore hold that under the facts presented here failure of appellant to gain admission to the home furlough program was a condition of a prisoner's confinement, which can be challenged in a direct action under section 1983 without exhausting state remedies or suing in habeas corpus. Accordingly, we will reverse the judgment of the district court and therefore remand this case to the district court for further proceedings in accordance with this opinion.
 
 APPENDIX
 
 17
 The following are the relevant portions of the administrative regulations governing all the Pennsylvania prerelease programs, including home furlough, BC-ADM 805 (1977):
 
 I. AUTHORITY
 
 18
 This Administrative Directive implements Act 173 of July 16, 1968, as amended by Act 274 of December 2, 1970, and Act 325 of December 27, 1974 (61 P.S. Sec. 1051 et seq.).
 
 II. SCOPE
 
 19
 The Bureau of Correction is charged with protecting society through the control and rehabilitation of offenders. In this context a variety of Pre-Release programs have been designed to provide a continuum of opportunities for inmates to demonstrate the exercise of self-control and individual responsibility. Use of these Pre-Release programs gives qualified inmates an opportunity outside correctional facilities to pursue gainful employment, vocational education or technical training, academic education, and specialized counseling or treatment in addition to wholesome social experiences.
 
 III. DEFINITIONS
 
 20
 Pre-Release : is a transfer which can be achieved by inmates of State Correctional Institutions and Regional Correctional Facilities after qualifying in accordance with the criteria, procedures, and policies set forth in Sections IV and VII of this directive. Pre-Release Transfer permits participation in the following programs: Work Release; Educational/Vocational Training Release; Temporary Home Furlough; and Community Services.
 
 
 21
 A. WORK/EDUCATIONAL/VOCATIONAL TRAINING RELEASE :
 
 
 22
 1. Work Release : is a program which enables an inmate to leave the correctional facility and work in the community. The inmate is required to return to the correctional facility at a designated time after the work day.
 
 
 23
 2. Educational/Vocational Training Release : is a program which enables an inmate to leave the correctional facility and participate in educational or vocational-technical training. The inmate is required to return to the correctional facility at a designated time after completion of training for the day.
 
 
 24
 B. TEMPORARY HOME FURLOUGH : is the authorized leave of an inmate from a State Correctional Facility for a period not to exceed seven (7) consecutive days for the purpose of furthering an inmate's rehabilitative programs. The inmate is required to return to the Correctional Facility at a designated time after the furlough.
 
 IV. CRITERIA FOR PRE-RELEASE TRANSFER
 
 25
 A. The process of obtaining Pre-Release Transfer is initiated when an inmate submits an application to his Counselor for participation in Work/Educational/Vocational Release, or for a Temporary Home Furlough, or for transfer to a Community Services placement. No inmate may be granted Pre-Release Transfer for any purpose unless he satisfies all of the criteria in this section.
 
 
 26
 Satisfying the eligibility criteria for Pre-Release Transfer does not mean the inmate will automatically be permitted to participate in one or more Pre-Release Programs. Other serious considerations such as the staff's evaluation of the inmate's progress, the relevancy of the particular Pre-Release Program to the inmate's reintegration, and the availability of space must be taken into consideration. Approval for participation in any one Pre-Release Program does not imply clearance for or preclude application for participation in any other program. The application must specify a particular Pre-Release Program.
 
 
 27
 B. The criteria for eligibility for Pre-Release Transfer are as follows:
 
 
 28
 1. Completion of one-half (1/2) of the minimum sentence, or one-half (1/2) of the anticipated release date in the case of indeterminate sentences, but in either event not less than nine (9) months in a State Correctional Facility.
 
 
 29
 2. No existing detainers for untried offenses, or detainers to serve other sentences with a maximum of two (2) years or more. However, in situations where the detainer sentence is less than two (2) years, prior written approval shall be obtained from the Office of the Deputy Commissioners.
 
 
 30
 An inmate shall take action to remove any and all untried detainers lodged against him.
 
 
 31
 No prior contact with the courts shall be made until written approval is received by the Superintendent from the Deputy Commissioner, authorizing action notwithstanding the detainer. Subsequently, the Superintendent shall make written contact with the sentencing judge(s) reflecting this approval, and requesting authorization for Pre-Release Transfer as outlined in Section VI of this directive.
 
 
 32
 3. Favorable recommendation of the correctional facility staff (e. g. Counselor, Work Supervisor, Housing Officer, Educational/Vocational Supervisor, and Deputy Superintendents for Treatment and Operations).
 
 
 33
 4. No Class I Misconducts during the nine (9) months prior to application, and no Class I Misconducts sustained from the time of application to the time of transfer. Multiple Class II Misconducts should be considered in a similar manner.
 
 
 34
 5. Medical clearance by the correctional facility medical officer.
 
 
 35
 6. Approval by the correctional facility Superintendent.
 
 
 36
 7. No written objection by the sentencing judge, or in the event he is unavailable, the sentencing court, within twenty (20) days of receipt by him of the written notice of the proposed Pre-Release Transfer, in those cases where the inmate has not yet completed his minimum sentence.
 
 
 37
 App. at 25-27.
 
 
 
 [1]
 The home furlough program is conducted pursuant to Pennsylvania administrative regulations which are reproduced in part as an appendix to this opinion
 
 
 [2]
 The regulations require that in order to be eligible an inmate must have served one-half his minimum sentence. Wright's sentence was 131/2 to 27 years. Wright was first confined on September 20, 1970. App. at 2. Thus, as of June 20, 1977, he had served one-half of his minimum sentence. This was confirmed in a letter from Defendant Robinson to Wright dated August 17, 1977
 
 
 [3]
 The complaints essentially differed only in the parties they named as defendants
 
 
 [4]
 The order reads:
 This 3rd day of January, 1979, it is ORDERED:
 
 
 [1]
 The above-captioned civil actions are consolidated for all purposes
 
 
 [2]
 Defendants' Motion to Dismiss the Complaint in Civil Action No. 78-2301 is GRANTED, it appearing that the exclusive federal remedy for the alleged wrongful acts is a petition for a writ of habeas corpus. See Bullock v. Cuyler, 463 F.Supp. 40 (E.D.Pa., 1978); Wright v. Johnson, No. 78-741 (E.D.Pa. July 10, 1978); Parson v. Keve, 413 F.Supp. 111 (D.Del.1976); cf. Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973) (alleged unconstitutional deprivation of "good time" credit could be redressed only through habeas corpus petition)
 
 
 [3]
 Defendants' Motion to Dismiss the Complaint in Civil Action No. 78-1520 is GRANTED for the reason stated in paragraph 2 of this Order
 
 
 [4]
 Plaintiff's equitable claims are DISMISSED without prejudice to plaintiff's right to reassert them in a petition for habeas corpus following the exhaustion of available state remedies. 28 U.S.C. § 2254(b) (1976)
 
 
 [5]
 Plaintiff's legal claims are DISMISSED without prejudice to plaintiff's right to reassert them under 42 U.S.C. § 1983 (1976) following the exhaustion of available state remedies
 App. at 50.
 
 
 [5]
 Wright's demand for fair application of the furlough eligibility criteria, as distinct from his demand for admission to the program, relates to the manner by which the prison authorities reach their decision and not the outcome of their decision. Thus, this particular claim of Wright's unmistakably goes not to the fact or duration of confinement but rather to the fairness of the decisionmaking process. Although impartial application of the furlough criteria to Wright might increase his chance to gain admission to the furlough program, injunctive relief ordering impartial application would not intrude upon or divest the prison administration of its ultimate discretion to grant or deny Wright's admission to the program. The Preiser rule is therefore in any event inapplicable. See, e. g., Fernandez v. Trias Monge, 586 F.2d 848, 852 n. 4 (1st Cir. 1978) (same with respect to request for probable cause hearing for pretrial detention); Inmates of Nebraska Penal & Correctional Complex v. Greenholtz, 576 F.2d 1274, 1278 & n. 2 (8th Cir. 1978) (same with respect to request for fair application of parole criteria), rev'd and remanded on other grounds, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Williams v. Ward, 556 F.2d 1143, 1150-51 (2d Cir.) (same), cert. dismissed pursuant to S.Ct. rule 60, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977); Austin v. Armstrong, 473 F.Supp. 1114, 1116 (D.Nev.1979) (same); Project Release v. Prevost, 463 F.Supp. 1033, 1038-39 (E.D.N.Y.1978) (same with respect for request for constitutional standards and procedures for civil commitment). This question was left open in Winsett v. McGinnes, 425 F.Supp. 609, 613 & n. 9 (D.Del.1976) (Winsett I ). In an appeal from a subsequent order, we implied that the Preiser rule would be inapplicable, as we hold today. See Winsett v. McGinnes, 617 F.2d 996, 1001 (3d Cir. 1980) (en banc) (Winsett II )
 
 
 [6]
 To the extent that the following cases hold otherwise, they will not be followed: Thomas v. Cuyler, 467 F.Supp. 1000, 1001-02 (E.D.Pa.1979); Bullock v. Cuyler, 463 F.Supp. 40, 42-43 (E.D.Pa.1978); Parson v. Keve, 413 F.Supp. 111, 112-13 (D.Del.1976); Winsett v. McGinnes, 425 F.Supp. 609, 613-14 (D.Del.1976) (Winsett I ). In Winsett I the injunctive claim was dismissed, but no appeal was taken. In a subsequent proceeding (Winsett II ), Winsett was denied damages, 443 F.Supp. 1369 (D.Del.1978), and we reversed in part, 617 F.2d 996 (3d Cir. 1980) (en banc). In Winsett II we did not reach the issue of whether the claim for an injunction ordering admission to a prerelease program (work release) could be brought under § 1983, since no appeal had been taken from the Winsett I determination, id. at 1001, and because this matter had thereafter become moot, id. at 1003
 We similarly note our disagreement with Austin v. Armstrong, 473 F.Supp. 1114, 1116 (D.Nev.1979), insofar as it held that admission to work release was governed by Preiser.