Raymond L. MELVIN, Appellant,

v.

Louis NICKOLOPOULOS, Garry R. Feltus, Alan A. Rockoff and Harvey Oliver, Appellees.

No. 87–5717.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1988.

Decided Dec. 30, 1988.

As Amended Feb. 13, 1989.

Rehearing and Rehearing In Banc Denied Feb. 14, 1989.

James D. Crawford (Argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Stuart J. Lieberman (Argued), Deputy Atty. Gen., Richard J. Hughes Justice Complex, Trenton, N.J., for appellees Louis Nickolopoulos and Garry R. Feltus.

Joseph A. Gallo, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, N.J., for appellee Alan A. Rockoff.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

This is an appeal from an order of the United States District Court for the District of New Jersey granting appellees' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss appellant Melvin's *pro se* complaint. Melvin claims appellees conspired against him with respect to actions they took as members of the New Jersey Parole Board.[1] Those actions returned Melvin to prison and postponed his parole date. Melvin claims they then failed to grant him a timely hearing, as New Jersey law requires, on the stabbing charge which was the basis for returning him to jail and postponing his release on parole. In his complaint Melvin said these acts resulted in his unlawful detention and sought damages.

We have appellate jurisdiction over the district court's order granting the state officials' Rule 12(b)(6) motion pursuant to 28 U.S.C.A. § 1291 (West Supp.1988). The scope of appellate review over an order granting a Rule 12(b)(6) motion is plenary.

### II.

On April 14, 1986, the New Jersey State Parole Board approved Melvin's application for parole. Parole was to take effect August 12, 1986. At the same time, Melvin was approved for a halfway house program until his parole date. While in the halfway house program, Melvin was charged with stabbing his brother and was returned to prison. The Parole Board ordered that Melvin was not to be released on parole pending further investigation. Several hearings were scheduled, but none held until April 22, 1987.

---

1. The district court had earlier dismissed Melvin's claim, arising out of the same series of occurrences, against a county prosecutor. That dismissal is not questioned in this appeal.

On May 28, 1987,[2] Melvin filed this action against Parole Board members and the county prosecutor, charging conspiracy to deprive him of parole without due process. Melvin asked for damages, a jury trial and a mandatory injunction directing that a parole hearing be held. Appellees moved to dismiss on the ground that the suit was in reality a petition for writ of *habeas corpus* and Melvin had not exhausted state remedies. After briefing on this issue, the district court held the complaint sounded in *habeas corpus* and ordered it dismissed. An amended order entered October 28, 1987 denied the writ and stated there was no probable cause for appeal.[3]

### III.

This case presents the question of whether a complaint should be construed as a *habeas corpus* petition or as a civil rights action. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the United States Supreme Court held that a suit seeking only restoration of good time credits was within the core of *habeas corpus* because it attacked the very duration of confinement. Accordingly, such a suit was subject to the statutory requirement of exhaustion of state remedies. 28 U.S.C.A. § 2254(b) (West 1977). The Court, however, stated:

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly ... a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.

*Id.* at 494, 93 S.Ct. at 1838 (emphasis in original). The Court specifically contemplated a situation in which a prisoner would simultaneously litigate a civil rights claim

relating to the condition of confinement in federal court and a claim challenging the fact or length of confinement in state or federal court. *Id.* at 499, n. 14, 93 S.Ct. at 1841 n. 14. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court examined a class action suit claiming prison disciplinary proceedings violated due process. The Court concluded that 42 U.S.C.A. § 1983 could support a claim for damages but not restoration of good time credits. Moreover, it said that a court could, as a predicate to awarding damages, issue a declaratory judgment invalidating the state's disciplinary procedures and enjoin their prospective enforcement. *Id.* at 554–55, 94 S.Ct. at 2973–74.

This Court has had to distinguish between *habeas* and § 1983 actions in several cases. In *Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir.1985) (in banc), *cert. denied*, 475 U.S. 1208, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986), prisoners challenged parole procedures applicable to inmates serving less than two year sentences. The court held that because plaintiffs were seeking fair decisionmaking procedures, rather than release, the action was a § 1983 claim. *Id.* at 1087. We noted, "the fact that a prisoner's success in the litigation might increase the chance for early release does not, in itself, transform the action into one for habeas corpus." *Id.* We also cited *Gerstein v. Pugh*, 420 U.S. 103, 107 n. 6, 95 S.Ct. 854, 859 n. 6 (1975), for the proposition that an action need not be brought as a *habeas* action when the relief sought is a hearing, not release. *Id.* at 1086. In *Wright v. Cuyler*, 624 F.2d 455 (3d Cir.1980), the plaintiff challenged the denial of his application for the home furlough program on grounds that it was arbitrary and capricious. Wright sought damages and declaratory and injunctive relief requiring that the standards for admission to the furlough program be fairly applied. We held the action was a civil rights claim because Wright was attacking "not the ultimate

---

**2.** The complaint was dated March 25, 1987. Because Melvin was filing *in forma pauperis,* the complaint was not filed until May.

**3.** A motions panel of this Court entered an order "granting appellant's request for certificate of probable cause without prejudice to the merits panel consideration of the case as having been brought under § 1983."

duration of his confinement but rather the conditions under which he is confined." *Id.* at 458. Wright was challenging the *"manner* by which the prison authorities reach their decision and not the *outcome* of their decision." *Id.* at 458 n. 5 (emphasis in original). Ordering the impartial application of procedures "would not intrude upon or divest the prison administration of its ultimate discretion to grant or deny Wright's admission to the program." *Id.*

Finally, we have held that even when a claim clearly sounding in *habeas corpus* is combined with a § 1983 claim for damages, the district court should not dismiss the § 1983 claim, but instead may, in its discretion, stay the action until state remedies are exhausted in the *habeas* claim. In *Harper v. Jeffries,* 808 F.2d 281 (3d Cir. 1986), the plaintiff sued his parole officer and the parole board for denying him parole because of an allegedly false arrest warrant. Harper sought release, damages and declaratory relief. This Court held that *Preiser* led to the "inescapable conclusion" that the district court should not have dismissed the damage claims simply because they were related to the *habeas* petition. *Id.* at 284.

 *Harper* is controlling on this appeal. The instant complaint may be read as either a civil rights complaint or a petition for writ of *habeas corpus*. Melvin originally asked that the parole board be required to hold a hearing and sought damages for being deprived of parole and being returned to prison without a hearing. As in *Wright* and *Georgevich,* the results of a hearing might increase the chances of parole. However, an order requiring a hearing would "not intrude upon or divest the prison administration of its ultimate discretion to grant or deny" parole. *Wright,* 624 F.2d at 458 n. 5. Appar-

ently, a state hearing was held during the pendency of this action. This renders the claim for injunctive relief moot. But if the hearing were wrongfully delayed, Melvin may be entitled to damages for his confinement during the time between his return to prison and the hearing date. The state argued in district court that Melvin's state court actions seeking release necessarily imply that the action in the district court is a *habeas* action. This argument is meritless. As discussed above, a prisoner may simultaneously seek release in state court and seek damages for violation of his civil rights in federal court.

Since Melvin's action was a civil rights action for damages, the district court erred in dismissing the complaint. Even if the part of the complaint seeking a hearing could be viewed as seeking *habeas* relief, the district court erred in dismissing the claim for damages.

### IV.

Like *Harper,* this case poses an "overlap in the factual and legal issues inherent in the § 1983 and habeas corpus actions." *Harper,* 808 F.2d at 285. Recognizing that adjudication of those overlapping issues before state remedies are exhausted would interfere with the congressional policy requiring initial resort to state tribunals in *habeas corpus* petitions, we stated "it would be proper for the district court to stay [the] § 1983 action until [plaintiff] has had an opportunity to exhaust all state remedies on his habeas corpus claim." *Id.*

 Here, those concerns do not apply. There is no need for the district court to consider a stay. Melvin lost his state remedies when he failed to seek a timely certification of an October 7, 1987 order[4] of the

---

4. Appellees' Brief at 36 n. * refers to an April 30, 1987 decision of the Appellate Division as part of the addendum to their brief. The only appellate division order in the addendum is dated October 7, 1987. Addendum to Appellees' Brief, Exhibit A. The addendum also contains a November 2, 1987 Judgment of Conviction in the New Jersey Superior Court, Middlesex County, Law Division–Criminal, entered after a jury found Melvin guilty of weapons' offenses under N.J.Stat.Ann. § 2C:39–7 (West

1982) (current version at N.J.Stat.Ann. § 2C:39–7 (West Supp.1988)) occurring on June 9, 10, 11 and 12, 1987. The indictment refers to the weapon as a "dangerous knife." N.J.Stat. Ann. § 2C:39–7 prohibits persons convicted of certain crimes from possessing dangerous weapons. Melvin had been convicted of crimes to which § 2C:39–7 applies—robbery, burglary and armed robbery—and apparently was awaiting parole on them when the weapons offense

Superior Court of New Jersey, Appellate Division in *New Jersey State Parole Bd. v. Melvin,* No. AM–1318–86T6 (N.J.Super.Ct. App.Div.1987), summarily dismissing his appeal "on the ground that it is clearly without merit. R. 2:11–3(e)(2)." Addendum to Appellees' Brief, Exhibit A.

■ Appellees argue that under 28 U.S. C.A. § 1738 (West 1966) the final order of the Appellate Division precludes Melvin from raising the issue of whether the Parole Board officials conspired to deprive him of a timely hearing on his return to jail and postponement of parole in the district court. They assert that Melvin raised a claim in *New Jersey State Parole Bd. v. Melvin,* that the Board lost jurisdiction to retain him when it failed to grant him a hearing within sixty days, and that this failure deprived him of due process. Therefore, appellees claim, *res judicata* bars relitigation of his claim that he was denied the timely hearing which the New Jersey law's interaction with the due process clause guarantees him.

In support, appellees cite *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed. 2d 56 (1984) (federal court should give a state court judgment same preclusive effect it would enjoy in the state's courts), and our holding that New Jersey has adopted a broad policy against claim splitting which requires a party to assert all possible claims related to a single controversy in the same action or have them barred. *Melikian v. Corradetti,* 791 F.2d 274 (3d Cir.1986). They also correctly note that the nominal difference between the designation of the Parole Board as the party respondent in the state case and its officials as individual parties to this action is immaterial. *See Gregory v. Chehi,* 843 F.2d 111 (3d Cir.1988) (government em-

ployees may take the benefit of a prior judgment in favor of the agencies that employ them).

Nevertheless, we cannot, on this appeal, consider appellees' argument that Melvin's § 1983 claim is barred by *res judicata.* It was not presented to or considered by the district court in granting appellees' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Issues not presented by the record before the district court cannot normally be considered on appeal. *Davis v. Rendell,* 659 F.2d 374 (3d Cir.1981); *Jaconski v. Avisun Corp.,* 359 F.2d 931, 936 n. 11 (3d Cir.1966). Here, the order of the New Jersey Superior Court, Appellate Division was not in the record before the district court.

■ This conclusion is not affected by the fact that we sometimes take judicial notice of subsequent developments not part of the district court record. *See Landy v. Federal Deposit Ins. Corp.,* 486 F.2d 139, 151 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). Under that principle, judicial notice of the New Jersey order dismissing Melvin's Parole Board appeal might be permissible. However, as in *Landy,* we do not think it would be appropriate for us to simply notice the subsequent action of the New Jersey court and then decide the preclusion issue. The record on the relation of that order to the issues in this case is, as Melvin states, "scant." Appellant's Reply Brief at 6. The state court's one sentence order does not tell us what issues it considered. Assuming its October 7, 1987 order related to Melvin's dispute with the Parole Board and its members over the delay in granting him a hearing on his retention beyond the original parole date, it does not tell us whether its dismissal for

which resulted in this action and the state judgment of conviction on his guilty plea occurred. Addendum to Appellees' Brief, Exhibit B. On January 19, 1989, the New Jersey Attorney General advised the Court by letter that the fact that Melvin had filed a petition for certification of "the judgment of A–539–87T6" with the Supreme Court of New Jersey had been omitted from the record. The Supreme Court of New Jersey denied certification of that case on February 16, 1988. If, as the New Jersey Attorney Gen-

eral believes, that petition for certification relates to the October 7, 1987 decision of the Appellate Division in AM–1318–86T6 denying Melvin's appeal from the Parole Board's adverse decision—a fact that remains somewhat unclear—Melvin would have "exhausted" rather than "lost" his state remedies. In either event, the policies which led us in *Harper* to suggest the possibility of staying the § 1983 action until the state *habeas* action is concluded have no application.

lack of merit refers to the lack of a timely hearing before the Parole Board or to the August 29, 1987 jury verdict finding him guilty of weapons charges in the trial division. Addendum to Appellees' Brief, Exhibit B. Indeed, Exhibit B does not show on its face the relation of the Judgment of Conviction entered on that verdict to the alleged stabbing incident appellees assert as the basis for Melvin's retention. Because the predicate of his due process claim for violation of his liberty interest is an illegal confinement, and proof of the weapons violation may destroy that predicate, those proceedings may well be relevant and controlling on the issue of whether Melvin's § 1983 action is precluded by the actions of the New Jersey state courts. However, these issues are more appropriately sifted out and considered by the district court after appellees answer the complaint and the necessary facts are developed by a Rule 56 motion for summary judgment, or otherwise.

Accordingly, we will vacate the district court's order granting appellees' Rule 12(b)(6) motion and remand for further proceedings consistent with this opinion.