

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2007

# Deavers v. Santiago

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3717

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Deavers v. Santiago" (2007). *2007 Decisions*. Paper 708.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/708

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3717

ROBERT DEAVERS,

Appellant

v.

ANGEL SANTIAGO, Assistant Superintendent;
TINA SILLETTI, Program Coordinator;
CATHRYN BUCHANAN, Lieutenant;
DAVID STARCHER, Occupational Therapist;
STEVEN M. RUSSO, Sergeant; GENE PRINCE, Sergeant;
LOUIS NORTON, Vocational Counselor; JONATHAN SIMMS, Drug Counselor;
CLEO HUNT, Senior Corrections Officer;
JACQUELINE OTTINO, Clinical Social Worker; JENNA CACESSE,
Clinical Social Worker, Collectively and in their Individual
capacities; GLENN FERGUSON, Clinical Director

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 02-cv-00809)
District Judge: Honorable Katherine S. Hayden

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2007

Before: RENDELL, AMBRO, and NYGAARD, Circuit Judges

(Opinion filed  July 23, 2007)

AMBRO, <u>Circuit Judge</u>.

After his release from prison, appellant Robert Deavers was civilly committed by the State of New Jersey under its Sexually Violent Predator Act, N.J. STAT. ANN. § 30:4-27.24–27.38. He is to be held in the custody of the Department of Corrections, and in the care of the Department of Human Services, Division of Mental Health Services, until such time as he is found to be no longer a risk to public safety. The crimes that got Deavers to this point are largely not relevant here, as he does not challenge his civil commitment. He does, however, pursuant to 42 U.S.C. § 1983, bring what appears to be a two-pronged due process claim (both procedural and substantive) arising out of an incident that occurred at the Special Treatment Unit ("STU") in which he was housed. The District Court granted summary judgment in favor of the defendants, and Deavers appealed. We now affirm.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). The summary-judgment standard is well worn:

> Summary judgment is proper when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986); *Anderson v. Liberty*

Because we write only for the parties, we mention only those facts necessary to our analysis. In brief, on December 7, 2001, Deavers brushed up against a female guard as he was entering the STU. The nature of the contact is disputed, but the guard claims that Deavers, through both of their clothes, rubbed his penis across her buttocks. Deavers denies that the contact was intentional or sexually motivated, and the guard did not claim definitively to know that it was. Regardless, the guard reported the incident to her supervisor, and Deavers was immediately placed in Temporary Close Custody ("TCC") for the weekend. TCC is a form of segregation used to control "emergent situations," and Deavers does not make any claim that his placement there at that time was improper.

Upon his removal from TCC three days later, Deavers was placed in the Restricted Activities Program ("RAP"). The RAP is described as "a program[] which restricts a resident from certain activities[] due to unacceptable behaviors, which may lead to a more dangerous behavior if not controlled or confined." It "is not to be used as punishment, and shall only remain in place until it has been determined by the treatment staff[] that the resident will no longer engage in the unacceptable behavior." The consequences of being

---

*Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact. *Celotex*, 477 U.S. at 322–26. The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

*Id.*

placed in the RAP are not predetermined, but "should relate to the violation." In Deavers's case, he was physically confined to the "tier" in which his room was located (*i.e.*, more restrictive than "Wing RAP" and less restrictive than "Room RAP"). He was also required to meet with a "RAP Team." In his initial meeting with the team, Deavers provided his explanation of the incident involving the guard, denying any intent (sexual or otherwise), and claiming that he simply misjudged the amount of space there was between himself and the guard as he walked through the doorway. At the end of the meeting, Deavers was given a writing assignment: to recount his version of the incident and opine on what he might have done differently to avoid the (mis)perception of intentional sexual contact. Deavers completed the assignment satisfactorily by all accounts.

Because Deavers's writing demonstrated that he could understand, given the context of the incident and his criminal history, how the guard might reasonably have perceived things differently, the RAP Team believed that he was a good candidate for follow-up therapy in "victim empathy" (an emotion thought to be lacking in sex offenders, the demonstrated presence of which is necessary for Deavers to be released from his commitment). Pursuant to this, the RAP Team gave Deavers another writing assignment, this time to describe how he believed the guard felt during and as a result of the incident. Unlike the first such assignment, Deavers did not take kindly to this one. He refused to do it and even mounted a hunger strike. During that time, the RAP Team

4

attempted to meet with him nearly every day. After nearly a month of refusing to complete the second assignment, however, Deavers finally acquiesced. He turned it in to the RAP Team on January 4, 2002, and on January 7 he was released from the RAP. Deavers filed the complaint in this suit on February 25.

## II.

As noted at the outset, Deavers makes several arguments grounded in due process. He first claims error in the District Court's ruling because there was a disputed issue of fact as to whether the incident involving the guard was intentional. If it was not (as Deavers has consistently maintained), then, he argues, his placement in the RAP without an opportunity adequately to contest it violates his constitutional right to procedural due process. This position is inconsistent with Supreme Court and Circuit precedent. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002).

In *Sandin*, the Supreme Court determined that there was no cognizable liberty interest in freedom from additional restraint in a prison setting. *See* 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."). Put another way, unless the deprivation of liberty is in some way extreme, then the Constitution does not require that a prisoner be afforded *any process at all* prior to deprivations beyond that incident to normal prison life. Our Court later extended *Sandin*'s foreclosure of procedural due process protections to a situation like that

5

presented here—a plaintiff civilly committed in New Jersey claiming a procedural due process violation by his wrongful placement in the RAP. *See Leamer*, 288 F.3d at 546; *see also Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002) (likewise extending *Sandin* to civil commitment settings). The District Court, therefore, was correct to grant summary judgment on this aspect of Deavers's due process claim; whether he came into contact with the female guard intentionally or accidentally is immaterial. *See* FED. R. CIV. P. 56(c) ("The judgment sought shall be rendered if . . . there is no genuine issue as to any *material* fact . . . ." (emphasis added)); *Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").[2]

Deavers's other due process claim seems to be grounded in the notion that if the Government civilly commits a person for needed medical treatment, it must provide that treatment. His specific claim is that because it would be therapeutically

---

[2]We also note, however, that even if there were a cognizable liberty interest in not being wrongfully placed in the RAP, it is likely that the procedure afforded Deavers here would pass constitutional muster. He was given an opportunity to present his version of the incident to the RAP Team in the form of a written assignment, which he did complete. Moreover, at his yearly status hearing, Deavers had the opportunity in front of a neutral decisionmaker, with the assistance of counsel, to stave off any truly consequential adverse effects from his placement in the RAP—an opportunity that yielded results, as the Judge concluded that the incident here "had developed into a contretemps which appears to be highly exaggerated on both sides." *Cf. Sandin*, 515 U.S. at 487 (noting that any possible liberty interest affected by prison discipline (*i.e.*, parole) is adequately protected by the parole hearing, which gives the prisoner an opportunity "to explain the circumstances behind his misconduct record"). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Deavers appears to have had such an opportunity here.

counterproductive to punish him for an act he did not commit (which one of the defendants admits it would be), the State of New Jersey failed to provide him with the medical treatment it must provide—an obligation it acquired by way of its having civilly committed him. *See Youngberg v. Romeo*, 457 U.S. 307, 316–19 (1982); *cf. Leamer*, 288 F.3d at 544–45 (noting that because "therapy is . . . an inherent and integral element to the [incarcerative] scheme, . . . [the inmate's] liberty interest in treatment is fundamental and cognizable for purposes of [due process].") . In short, because the defendants put Deavers in the RAP without first determining whether the contact with the female guard was intentional, he asserts that his constitutional right to substantive due process was violated.

We agree with the analysis of the District Court. A defendant's right to substantive due process is violated when the "behavior of the governmental officer is so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Here the record reveals no such thing. The RAP Team merely used an opportunity that presented itself—the incident with the female guard—to help Deavers understand how his behavior might be perceived by those around him and to learn to empathize with those perceptions. As the Supreme Court has stated,

> [a treatment] decision, if made by a professional, is presumptively valid; liability my be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base

the decision on such a judgment.

*Youngberg*, 457 U.S. at 323 (footnotes omitted). Deavers points to nothing in the record showing that the treatment decision made by the RAP Team to have him produce two essays detailing varying perspectives on the incident—even if he did not intentionally touch the guard—is a "substantial departure from accepted professional judgment," *id.*, or otherwise conscience-shocking.

\* \* \* \* \*

For the foregoing reasons, we affirm the judgment of the District Court.