**Douglas MINATEE, Petitioner,**

v.

**State of NEW JERSEY, et al., Respondents.**

**Civil Action No. 10–770 (PGS).**

United States District Court, D. New Jersey.

April 26, 2010.

488

Douglas Minatee, Avenel, NJ, pro se.

### MEMORANDUM OPINION

PETER G. SHERIDAN, District Judge.

IT APPEARING THAT:

1. On February 22, 2010, the Clerk received a document from Petitioner executed on a § 2254 form. *See* Docket Entry No. 1.

2. The content of the document received was not amenable to clear understanding. *See id.* Specifically, it was unclear which particular determination Petitioner was challenging (*i.e.,* the determination issued by the state court on which particular date and with regard to which particular matter), whether Petitioner filed his application while being held in confinement pursuant to the very order he was wishing to challenge (or if Petitioner was held in confinement pursuant to a superceding order), whether Petitioner duly exhausted his claims in all three levels of the state court, as well as whether Petitioner has submitted his instant application timely. *See id.*

3. Consequently, this Court issued an order directing Petitioner to submit an amended petition clarifying the aforesaid ambiguous aspects of Petitioner's challenges. In order to assist Petitioner in that endeavor, the order detailed to Petitioner the relevant legal requirements. *See* Docket Entry No. 2. The order also advised Petitioner of his *Mason* rights.

4. In response, Petitioner submitted an amended petition, *see* Docket Entry No. 3, the Clerk's receipt of which resulted in a premature reopening of this matter

in the sense that it was conducted without screening of the amended petition, and without a determination of whether the amended petition warranted issuance of an order directing responsive pleadings. *See* Docket Entry No. 4.

5. In light of the Clerk's premature reopening of this matter, this Court screened the amended petition and-upon observing that Petitioner still failed to clarify the ambiguities of his original petition—found it prudent to administratively re-terminate the matter and allow Petitioner another opportunity to clarify the ambiguities of his application. *See* Docket Entry No. 5. Consequently, the Court vacated the order directing reopening and provided Petitioner with additional time to submit a superceding re-amended petition. *See id.*

6. Petitioner duly complied with the Court's directive by submitting his re-amended pleading ("Petition"). *See* Docket Entry No. 7. While the Petition, still asserting jurisdiction under § 2254, is not a document stating Petitioner's claims with absolute clarity, *see id.,* the content of the Petition is sufficient for the Court to determine at least the gist of Petitioner's claims and to address the dispositive aspects of his submission. *See id.* Specifically, it appears that Petitioner, being a civilly committed individual currently confined at the Special Treatment Annex, Avenel, New Jersey, was-at a certain point in time-allowed to participate in a certain state furlough program which envisioned a certain number of furlough periods (or, perhaps, an unlimited number of such furlough periods). It appears that Petitioner completed eleven of such furlough periods and was either about to start or even started the twelfth. It also appears that, during his eleventh furlough (or during one of Petitioner's latest furloughs out of these eleven), Petitioner

was staying with his cousin and—either prior to Petitioner's twelfth furlough or during that twelfth furlough—the state officials discovered that Petitioner's cousin had a criminal conviction (or a charge and ensuing investigation) based on Petitioner's cousin's sexual misconduct. It also appears that this discovery caused the state officials great concern in light of Petitioner's status as a sexually violent predator; that concern, it seems, triggered an investigation by state officials and state-retained psychiatrists. It appears from the Petition that Petitioner developed an impression that the aforesaid investigation would protract for about half a year or so, and then Petitioner would be allowed to continue with his furlough program, but Petitioner's hopes did not materialize and—as of now—Petitioner is still prevented from partaking in the furlough program. (Petitioner, it seems, is of opinion that denial of continuous participation in the furlough program violates his rights.) It is unclear from the face of the Petition whether the investigation into Petitioner's stay with his cousin has concluded or is still ongoing, but it appears sufficiently certain that Judge Peretti of the Superior Court of New Jersey, Law Division, suspended Petitioner's twelfth furlough on September 19, 2007, and such suspension were to protract until Petitioner would be re-cleared by the state officials for further participation in the furlough program. *See generally,* Docket Entries Nos. 1, 3 and 7. Since Petitioner's hopes to restart participating in the furlough program have not, thus far, materialized, Petitioner is challenging Judge Peretti's suspension order. *See* Docket Entry No. 7. Petitioner clarifies that he filed an application challenging Judge Peretti's suspension order with the Superior Court of New Jersey, Law Division, on or about March 21, 2008,[1] but—in no ambiguous terms—the Petition states that Petitioner did not take any appeals and, as of now, does not know about the current status of his challenge to Judge Peretti's suspension order that was filed with the Law Division. *See id.* at 3.

■ 7. To start, Petitioner's challenges have to be dismissed for lack of jurisdiction in light of the Third Circuit law. While the federal courts in the country are split as to whether challenges to denial of furlough could be raised in a habeas action, the Court of Appeals for the Third Circuit guided the district courts in this circuit that challenges based on denial of furlough fall outside the "core of habeas" and, hence, must be raised in a civil complaint. *See Wright v. Cuyler,* 624 F.2d 455 (3d Cir.1980). In *Wright,* prisoner brought two actions against prison superintendents asserting that they denied his participation in a home furlough program. The district court dismissed the prisoners' claims as unexhausted. The Court of Appeals reversed finding that challenges based on denial to participation to home furlough program were attacking not the ultimate duration of his confinement but rather the conditions under which the prisoner was confined. *See id.* Therefore, under the holding of *Wright,* the instant application shall be dismissed for lack of jurisdiction.

8. However, this Court cannot ignore the fact that the Court of Appeals' decision in *Wright* was rendered in 1980, and that holding might have been altered by

---

1. The Court is not entirely clear as to the mode of that challenge. In light of the fact that Petitioner addressed his challenge to the Law Division rather than to the Appellate Division, the Court presumes that Petitioner's challenge was made in the form of a motion for reconsideration or a mandamus application.

the Court of Appeals' later decisions. As the Court of Appeals observed lately, "the precise meaning of 'execution of a sentence' [remains] hazy." *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 242 (3d Cir.N.J.2005). In *Woodall,* considering rulings from the Courts of Appeals of the Second, Sixth, Ninth, and Tenth Circuits, and the plain meaning of the term "execution" (to put into effect or carry out), [the Court of Appeals for the Third Circuit] allowed a [habeas] challenge to regulations that limited a prisoner's placement in a community correction center ("CCC"). *See id.* at 243. [The Court of Appeals for the Third Circuit] noted that "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution." *Id.* Specifically, in finding Woodall's action properly brought [as a habeas matter, the Court of Appeals for the Third Circuit] determined that "placement in a CCC represents more than a simple transfer." *Id.* We [therefore, the Court of Appeals for the Third Circuit] stated that "Woodall's petition crosse[d] the line beyond a challenge to, for example, a garden variety prison transfer [and was properly brought as a habeas]." *Id.*

*Ganim v. Fed. Bureau of Prisons,* 235 Fed.Appx. 882, 883 (3d Cir.N.J.2007). Revisiting the same issue two years after *Woodall,* the Court of Appeals further distinguished routine between-prison transfers from prisoner's challenges based on denial of his/her placement in an environment qualitatively different from that of correctional facility. *See id.* at 883–84.

The cases [the Court of Appeals for the Third Circuit] cited approvingly in *Woodall* were not challenges to routine transfers. [The Court of Appeals for the Third Circuit] relied in particular on *Jiminian v. Nash,* 245 F.3d 144 (2d Cir.2001), *Hernandez v. Campbell,* 204 F.3d 861 (9th Cir.2000), *United States v. Jalili,* 925 F.2d 889 (6th Cir.1991), and *Montez v. McKinna,* 208 F.3d 862 (10th Cir.2000). *Jiminian* used expansive language to state that "[a habeas application may] challenge [ ] the execution of a ... prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." 245 F.3d at 146.... *Hernandez,* like *Jiminian,* described the use of [habeas] in broad strokes, noting that [applications raising habeas challenges] are those "that challenge the manner, location, or conditions of a sentence's execution." *Hernandez,* 204 F.3d at 865.... The prisoner in *Jalili* challenged the execution of his sentence, arguing that his confinement in a secure prison instead of a community treatment center violated the terms of his sentence. *See* 925 F.2d at 891–92. As in *Woodall,* ... the difference between the two facilities was great. Similarly, the transfer at issue in *Montez* was no simple transfer within the same system-the prisoner challenged transfers from a Wyoming state-operated prison to a private Texas correctional facility and from the Texas facility to a private Colorado correctional facility. *See* 208 F.3d at 864.

*Id.* at 884.

Hence, this Court cannot rule out the possibility that-in light of the considerations underlying the Court of Appeals' decisions in *Woodall, Ganim* and analogous matters, Petitioner's challenges to denial of furlough might be entertained

in a habeas action in spite of the holding of *Wright;* such conclusion necessarily suggests that this Court would have jurisdiction to address Petitioner's § 2254 challenges, that is, provided that these challenges are both timely and duly exhausted in all three levels of the state court.

■ 9. Here, if the Court has jurisdiction over this habeas matter, Petitioner's challenges have to be dismissed as unexhausted and/or untimely. If this Court is to hypothesize that Petitioner did not appeal Judge Peretti's determination (and his motion for reconsideration of Judge Peretti's decision did not toll his appeal period), it is self-evident that Petitioner's instant challenge to Judge Peretti's decision (issued on September 19, 2007) is time-barred, since Petitioner's one-year period of limitations under the AEDPA began to run at the time when Petitioner's time to appeal Judge Peretti's decision to the Appellate Division expired, and that one year—in turn—expired long before Petitioner handed his original petition in this matter to his Avenel officials for mailing to this Court.[2] Thus, the Petition has to be dismissed, with prejudice, as untimely. Moreover, even if this Court is to hypothesize that Petitioner has valid grounds for equitable tolling but—in spite of the Court's detailed clarification of the statute of limitation requirements and the equitable tolling aspect provided in the Court's first order issued in this matter, *see* Docket Entry No. 2,—Petitioner somehow omitted stating his grounds for equitable tolling, the Petition is nonetheless subject to dismissal (although, without prejudice) for failure to exhaust state court remedies: this is so because the Petition unambiguously indicates that Petitioner's challenges were presented only to the Law Division, and no appeal was brought before the Appellate Division, and no certification was sought from the Supreme Court of New Jersey.

■ 10. Finally, even if this Court were to consider whether it would be appropriate to re-characterize, under the holding of *Wright,* Petitioner's instant habeas challenges into civil right challenges, such re-characterization would be unwarranted.[3] This is so because, so re-characterized, Petitioner's challenges would yield invalid due process allegations. Indeed, a very similar issue was addressed in *Briggs v. Fields,* 1995 WL 422858, 1995 U.S.App. LEXIS 18069 (10th Cir.1995), where the Court of Appeals for the Tenth Circuit addressed claims of an inmate who filed a 42 U.S.C. § 1983 action seeking redress for denial of furloughs. The Tenth Circuit explained as follows:

> [Here, the inmate] complains that [a change in] the furlough statute . . . deprived him of a legal right . . . . Under the Due Process Clause, [ an inmate] can challenge the conditions of his confinement if the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472 [115 S.Ct. 2293, 132 L.Ed.2d 418] (1995). [A] deprivation of the ability to participate in a furlough program is [not] an "atypical and significant hardship." . . . [O]ur

**2.** While the original petition is dated as of March 21, 2008, *see* Docket Entry No. 1, at 12; Petitioner's letter accompanying the original petition is dated as of February 8, 2010, *see* Docket Entry No. 1–3, at 1, which indicates that Petitioner could not have submitted his original petition to his Avenel officials for mailing to this Court prior to February 8, 2010.

**3.** The Court notes, in passing, that such re characterization would also subject Petitioner to a different filing fee requirement (*i.e.,* here, Petitioner paid $5 filing fee, but the filing fee for a non-habeas civil action is $350).

conclusion is supported by the fact that prison officials maintain unconstrained discretion in whether to grant furloughs-[the] law never provided prisoners with an absolute right to participate in a furlough program. *Id.* at \*1–2, 1995 U.S.App. LEXIS 18069 at \*3–6 (footnote 4 incorporated).

■■ 11. Arguably, it is not immediately clear whether the holding of *Briggs* (examining claims raised by a prisoner and, hence, providing an analysis based on *Sandin* ) is applicable to the case at bar since Petitioner here is a civilly committed individual rather than a prisoner. Generally, the courts in the Third Circuit have repeatedly applied the standard set forth in *Youngberg*[4] to 1983 suits brought by involuntarily committed civil patients alleging due process violations. *See, e.g., Brandt v. Davy*, 2006 WL 517685, 2006 U.S. Dist. LEXIS 8835 (D.N.J. Mar. 2, 2006) (applying *Youngberg* ). The reason for the distinction ensues from the long-established proposition that lawful incarceration, unlike civil commitment and pre-trial detainment, "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin*, 515 U.S. at 485, 115 S.Ct. 2293 (internal quotation omitted). Consequently, the Third Circuit has generally maintained that an involuntarily committed patient's liberty interests are to be balanced against the state's interest in maintaining order, as expounded on in *Youngberg*. *See, e.g., Halderman v. Pennhurst State School & Hosp.*, 707 F.2d 702 (3d Cir.1983).

12. That being said, the Third Circuit has recently extended *Sandin* to certain group of civil commitment challenges. For instance, in *Deavers v. Santiago*, the Court of Appeals held, *inter alia*, that *Sandin* applies to a convicted sex offender civilly committed to an institution run by the NJDHS pursuant to the Sexually Violent Predator Act. *See* 243 Fed.Appx. 719 (3d Cir.2007). Similarly, in *Rivera v. Rogers*, 224 Fed.Appx. 148 (3d Cir.2007), the Third Circuit affirmed the district court's decision to apply *Sandin* to a convicted sex offender's challenge of his civil commitment conditions, relying on the plaintiff's previous status as a prisoner:

> Given that [the plaintiff] has been convicted of a crime and is being detained in the Special Treatment Unit because of his classification as a sexually violent predator under New Jersey's Sexually Violent Predator Act, his status is similar to that of a prisoner and we agree with the District Court's decision to proceed with its analysis of his First Amendment claim by looking to case law interpreting a prisoner's rights.

4. In *Youngberg v. Romeo*, the Supreme Court formulated a balancing test to "determine whether a substantive right protected by the Due Process Clause has been violated." 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). The Court held, *inter alia*, that mental patients retain certain liberty interests, including personal security and the freedom of movement, often referred to as the freedom from bodily restraints. *See id.* Under *Youngberg*, a court must weigh two competing values, "the liberty of the individual and the demands of an organized society." *Id.* (quoting *Poe v. Ullman*, 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J. dissenting)). "[I] n balancing the state's interests against a confined person's liberty interests the balance should not be left to the unbridled discretion of judge or jury." *Scott v. Plante*, 691 F.2d 634, 637 (3d Cir.1982). At its most basic level, the Fourteenth Amendment gives rise to a "State duty to provide reasonable safety for all residents and personnel within the institution." *Brandt v. Aunach*, 2005 WL 3077922, 2005 U.S. Dist. LEXIS 27818 (D.N.J. Nov. 14, 2005) (quoting *Youngberg*, 457 U.S. at 324, 102 S.Ct. 2452).

13. Here, Petitioner—in no ambiguous terms—asserts that his civil commitment is a result of Petitioner's classification as a sexually violent predator, and the commitment was triggered after Petitioner "maxed out" on his underlying sentence based, in turn, on his sexual misconduct. *See* Docket Entry No. 1, at 2. Therefore, Petitioner's due process challenges are subject to *Sandin* test and, under the above-discussed thoughtful discussion provided by the Tenth Circuit in *Briggs,* Petitioner's due process challenges are subject to dismissal. In light of the foregoing, any re-characterization of Petitioner's instant application into a civil complaint would be futile, since it would result in dismissal of Petitioner's allegations for failure to state a claim upon which relief can be granted. For the foregoing reasons, the Petition will be dismissed for lack of jurisdiction, or-in alternative-dismissed with prejudice as untimely or without prejudice for failure to exhaust state remedies, and re-characterization of the application at hand will be undertaken as unwarranted in light of Petitioner's failure to state a cognizable due process claim.

14. Finally, the Court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Similarly, where the district court reached the merits of the claims, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Here, reasonable jurists would not conclude either that this Court erred in dismissing the petition or that Petitioner should be allowed to proceed further. Moreover, Petitioner's application failed to make a substantial showing of the denial of a constitutional right. Consequently, regardless of whether the Petition is dismissed on procedural grounds or upon substantive assessment of Petitioner's claims, a certificate of appealability shall not issue.

For the foregoing reasons, the Petition will be dismissed and a certificate of appealability will not issue. An appropriate Order accompanies this Memorandum Opinion.